## PETROLEUM COMPANY *v.* COAL, COKE, AND MANU- FACTURING COMPANY.

### (*Knoxville.* November 7, 1890.)

1. EJECTMENT, *Defenses by answer to ejectment bill.*

   The Court, without deciding the question, intimates that legal defenses may be made by answer to a pure ejectment bill.

2. SAME. *Does not lie to recover mining interest in land, when.*

   Where mines have not been opened, and the lessee has never been in possession, there can be no recovery by ejectment of the interest that he acquired in lands under a lease which provides as follows: "Witnesseth, that the said ——— has this day leased unto the said C. and others, or their assigns, for the term of 99 years, all of his mineral and petroleum interests, for the purpose of exploring for coal, petroleum, lead, iron, copper, and other ores, metals, and minerals, and use of timber, etc., for mining, working, smelting, and rending the same, and, for such purpose, erect all necessary buildings and other apparatus and fixtures for carrying on their operations in and upon the following described parcel of land. ❋ ❋ ❋ The said C. and others, for and in consideration of the above lease, obligate and bind themselves to pay to the said ——— the one-tenth part of the net profits of whatever may be discovered and worked in and upon said lands deemed advisable to be tested and worked by the said C. and others or assigns. They, the said C. and others, further agree to commence testing said property within three years' time."

   Case cited and approved: 72 Mo., 535.

3. MINING LEASE. *Construction of lease. Consideration.*

   This lease becomes *nudum pactum* if construed to impose no *legal obligation* upon the lessee to explore and discover mines or to work them when discovered. That construction would convert it into a mere voluntary option that the lessors could withdraw at any time before acceptance.

Petroleum Company *v.* Coal, Coke, and Manufacturing Company.

4. SAME.   *Same.   True meaning.*

But this lease, by proper construction, obligated ·the lessee to "test" the leased lands within three years, and, if minerals were discovered, to work them effectively within a reasonable time thereafter; and the "testing" within that period, and the working of the minerals within reasonable time after their discovery, were not mere *covenants*, but *conditions* upon which the life of the lease depended.   For want of compliance with these conditions, this lease was forfeited.

Cases cited and approved: Carnes *v.* Apperson, 2 Sneed, 561; 89 N. C., 31.

5. SAME.   *Same.   Character of test required.*

And the "test" required by this lease is such as would discover not only the presence of minerals if they exist, but their commercial value, considering their abundance and accessibility.   It should afford such information as a prudent and experienced investor would desire before expending money in digging shafts or erecting machinery proper for the profitable working of such mines.   The test in this case was not of this character.

---

FROM CAMPBELL.

---

Appeal from Chancery Court of Campbell County. H. R. GIBSON, Ch.

SCOTT & WELCKER, INGERSOLL & PEYTON, J. T. & J. K. SHIELDS for Complainant.

HENDERSON & JOUROLMON for Respondent.

LURTON, J.   Early in 1865 Thomas H. Calloway and John R. Branner and their associates obtained mineral leases upon a large number of tracts of

land, aggregating 100,000 acres. These lands were owned by many different owners. The leases were to run for ninety-nine years, and in all essential respects were identical in terms. The complainant is a corporation, and, by assignment, is now the owner of these leases. The defendant is likewise a corporation, and, by purchase, has become the owner in fee of several of the tracts of land on which mineral leases are held by the complainant. More than seven years before the bringing of this bill, the defendant, upon one of its separate but adjacent tracts, opened up the very valuable coal mines widely known as the "Jellico Coal Mines." The coal-pits and workings of defendant are exclusively upon one of its tracts; and this tract complainants do not sue for, doubtless deeming the defense of the statute of limitations a bar to any suit for a mine so adversely holden.

This suit is for the purpose of recovering the mines and mineral interests in and under the surface of several tracts adjacent to and surrounding the parcel upon which the shafts 'and pits and tunnels of defendant are situated.

Complainant insists that the suit is one of ejectment, and as such is a legal action, and subject only to such legal defenses as are admissible at law under the plea of not guilty. The jurisdiction of the Chancery Court rests upon the Act of 1877, whereby jurisdiction was conferred upon that Court in certain causes of action theretofore cognizable alone in a Court of Law. It is therefore

argued that in suits to which jurisdiction was thus extended, legal defenses are alone applicable, unless set up by an independent pleading, such as an original bill or cross-bill. We are not prepared to yield to this assumption, though not now decided. It is more than doubtful whether this suit could be maintained as a straight action of ejectment at law; and this for two reasons:

First, no coal mines or mines of any other sort have been opened upon the lands covered by the leases involved. There has been no separation of the mineral interest by deed from the fee. The contracts under which complainant sues are leases and not deeds. An action of ejectment to recover a mine will undoubtedly lie where the mine has been opened, because, in that case, the defendant, by the writ of ejectment, can be removed, and the plaintiff put in possession of the mine by putting him in possession of the shaft, pit, or opening. Says Mr. Adams, in his work upon Ejectment:

"Though a man may have a right to the mine without any title to the soil, yet, the mine being fixed in a certain place, the Sheriff has a thing certain before him of which he can deliver possession. When a grant of mines is so worded as not to operate as an actual demise, but only a license to dig, search for, and take metals and minerals within a certain district during the term granted, it seems that a party claiming under such a grant, and who shall open and work and be in

actual possession of any mines, may, if ousted, maintain ejectment in respect of them; but he cannot maintain ejectment, either in respect of mines within the district which he has not opened or which, being opened, he has abandoned." Adams on Ejectment, side page 20.

The second reason operating to defeat an action of ejectment at law upon these leases, so called, is that complainants have never been in possession. Before entry such an agreement as here sued upon does not operate to convey an estate, but merely confers a right thereto. The essential parts of these leases are as follows: " Witnesseth, that the said ———— has this day leased unto the said Calloway and others, or their assigns, for the term of 99 years, all of his mineral and petroleum interests, for the purpose of exploring for coal, petroleum, lead, iron, copper, and other ores, metals, and minerals, and use of timber, etc., for mining, working, smelting, and rending the same, and, for such purpose, erect all necessary buildings and other apparatus and fixtures for carrying on their operations in and upon the following described parcel of land," etc. " The said Calloway, Branner & Co., for and in consideration of the above lease, obligate and bind themselves to pay to the said ———— the one-tenth part of the net profits of whatever may be discovered and worked in and upon said lands deemed advisable to be tested and worked by the said Calloway, Branner & Co., or assigns. They, the said Calloway, Branner & Co.,

further agree to commence testing said property within three years' time."

Such an agreement can only be perfected by entry, and until possession has been taken the right is an executory one (called by the old law writers an *interesse termini*). Such an interest is not one which qualifies the owner to maintain ejectment. Washburn on Real Estate, side pages 295, 296; Taylor's Landlord and Tenant, Sec. 15.

Such a lessee, before entry, could not maintain trespass or conversion. *Idem; Austin* v. *Huntsville Coal Company*, 72 Mo., 535.

But complainant has not limited its prayer for relief to a common law writ of ejectment, for it has most providently added the most equitable of all prayers—one for general relief. Upon looking to the intent of these agreements as ascertained by looking to all parts of the instrument, and to the facts contained in the transcript, we are of opinion that neither in law or equity is complainant entitled to any relief. The well-defined distinction between a *condition* in such instruments and a *covenant* has been much insisted upon by the learned solicitors engaged in the cause. The contention of complainant is that the provision concerning " testing," heretofore set out, has been, in fact, substantially complied with; and that, if not, then the provision is a mere covenant, not going to the root of the contract, and not a condition upon which the lease was dependent. So it insists that while the law would imply an agree-

ment that minerals discovered by the "test" provided for should be worked and mined within a reasonable time, yet such implied provision is a mere covenant, for the breach of which an action for damages is the only remedy. It is by no means clear that the lessees have in express terms bound themselves to either "test" or work mines so discovered. On the contrary, it would seem that it was the purpose of the lessees to engage only to "test" or work such tracts or parts of tracts as they should themselves deem advisable.

The provision on this subject is, that in consideration for the lease the lessees bind themselves to pay the lessors "one-tenth part of the profits of whatever may be discovered and worked in and upon said lands, *deemed* advisable to be tested and worked" by the lessees. Then follows the agreement that the lessees shall commence testing within three years. A fair construction of this lease would leave it optional as to whether the lessees should make any effort whatever to discover the mineral value of any particular lease, and, if "tested" and minerals developed, it seems to depend upon their judgment as to whether such mines shall be worked.

If they deem it advisable to "test" a particular tract, they bind themselves to do so within three years. No other consideration for these leases is pretended than a share in the net profits resulting from such mines as they shall deem it "advisable" to test and work. No penalty is agreed upon if

they shall fail to "test," and no rent or other compensation is provided if they shall fail to work developed mines of minerals. If this construction be the right one, then these contracts, where actual mining has not been begun, are void for want of any consideration to support them. Some consideration must be either expressed or implied, or a lease, as any other contract, is void. If the compensation to be paid the lessor depends upon the profit to result from the development and working of a mine, and the lessee is not bound, either expressly or impliedly, to explore and discover, or, when discovered, to work such mine, then no consideration for the lease exists. It is a mere option based upon no consideration, and may be withdrawn at any time before money is expended in doing what is optional upon the part of the lessee. Taylor's Landlord and Tenant, Sec. 152.

But if the contract be construed as binding the lessee to "test" the leased lands within three years, and as requiring the working of such "tested" tracts within a reasonable time, then it must be very evident that under leases of this character both of these provisions are *conditions* upon which the lease depends. If the contracts had fixed a money rent in case of failure to "test" or "work," and the payment of such rent or penalty is not made a cause of forfeiture, the rule would be different. But here the lessee is to "test" and "work" not only for his own benefit,

but for the benefit and profit of the owner. No other compensation for the lease is contemplated than that which is to result 'from the discovery and working of mines covered by the lease. The testing provided for in such case was of the very essence of the contract, not only with respect to the time within which it was to be done, but as to the thoroughness and certainty with which the mineral value of the lands should be ascertained. If the "test" should develop valuable deposits of ore or petroleum, the owner of the fee would, in case of default of lessee in operating such mines, be enabled to utilize such discovery by the enhanced value of his lands, or by operating the mines himself or through others. It cannot be conceived that these lessors contemplated for one moment that they had for ninety-nine years deprived themselves of the mineral value of their lands, without securing the operation of the mines by their lessees. The "testing" provided for was manifestly a condition upon which the lease depended. If such test showed no minerals, then the contract was at an end; if it, on the other hand, showed the presence of valuable mines, then the lessees were bound to operate them in good faith for the joint profit of themselves and the owners of the fee. Technical words are unnecessary to raise a condition. If a fair and reasonable construction of the instrument shows that a lease shall depend upon the doing or not doing something essential to the purposes of the contract, the

law implies the condition; and whether such condition be precedent or subsequent is to be resolved by the intention of the parties, to be gathered from the entire instrument and the circumstances surrounding the transaction. *Carnes* v. *Apperson & Co.*, 2 Sneed, 561.

Where there is no other consideration for a lease than the discovery and working of minerals supposed to exist, the exploration for the purpose of ascertaining the presence of minerals should be substantially and thoroughly made. The "testing" should be so thoroughly done as to determine not only the presence of such minerals, but their commercial value, considering their abundance and accessability. The information resulting should be such as a prudent and experienced investor would desire to know before expending his capital in the digging of shafts or the erection of machinery proper for the profitable working of such a mine. No such testing was made, or pretended to be made, under these leases. A non-expert is shown to have been sent to look over the immense body of leased lands, and, from surface exposure, ascertain what he could. Whether he ever went upon the lands now involved is more than doubtful, and certainly is not a proven fact. What he may have done upon other lands is wholly immaterial unless he thoroughly "tested" the lands now concerned. From some of the leased lands this inexperienced man obtained some specimens of coal, and made some inexact measurements of exposed

. veins.   These specimens, none of which are shown to have been taken from defendant's lands, were not even examined or preserved by his principals. The "test" was not in good faith, and was well-near worthless.   The purpose, as he states it, was "to hold the leases" by what may well be called a bird's-eye view of a hundred thousand acres of land.   It was not entered upon with any serious view or purpose of preparing for the working of mines.   It was deemed that a technical survey was necessary to hold these leases indefinitely over the lands of the owners.   It was of no practical value, and not a compliance in good faith with the condition upon which these leases depended. After this survey nothing more was done toward the development of these lands.   Notwithstanding the absence of railway transportation, the law implied a condition that these minerals, if any there were, should, within a reasonable time, be operated or the leases surrendered.

In the case of *Conrad* v. *Morehead* the facts were that a lease for mining purposes was executed for ninety-nine years.   The consideration to the lessor was a share in the profits of mining. The right to surrender the lease at any time was reserved by the lessee.   There was no covenant or condition requiring the working of the mines.   It was held by the Supreme Court of North Carolina that there was an implied agreement that the mines should be worked in a reasonable time and manner, and that a failure, for more than twenty

years, to work the mine operated in law as a for-feiture of the lease, although at the beginning of the term the lessee had operated the mine for many years. 89 N. C. Reports, 31.

Upon the whole case, we are content to affirm the decree of the learned Chancellor dismissing the bill.