[No. 15673. In Bank.—May 28, 1895.]

JOHN F. LASSING, RESPONDENT, *v.* J. G. JAMES, APPELLANT.

CONTRACTS—INTERPRETATION—SEEMING CONTRADICTION.—Where there are several provisions or particulars in a contract, a seeming contradiction in the particulars must be avoided, if possible, by such a construction as will give effect to all of the provisions, and allow them all to stand.

ID.—CONTRACT FOR PASTURAGE OF CATTLE.—In a contract for the pasturage of cattle in fields of growing alfalfa, in which were situated nine stacks of hay, a provision in the contract that five dollars per ton is to be paid for each and every ton of hay fed between certain dates is only seemingly repugnant to another clause of the same contract by which the owner of the cattle agrees to pay in installments for all the hay in the nine stacks; but the second clause is simply broader, and reaches further than the first.

ID.—UNCERTAINTY IN CONTRACT—ORAL EVIDENCE.—Where the terms of a contract are ambiguous or uncertain it must be interpreted in the sense in which the promisor believed at the time of making it that the promisee understood it; and where, in a contract for the purchase of hay, the oral evidence shows beyond question that both parties under-

stood that the owner of the cattle was buying all of the hay in stacks, at a certain price per ton, the contract must be so interpreted.

ID.—PRESUMPTION AGAINST PROMISOR.—In cases of uncertainty the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist, and the promisor is presumed to be such party; and, if the promisor actually prepared the contract, he is the one who caused any uncertainty to exist as to his promise, and it must therefore be interpreted most strongly against him.

ID.—INTENTION OF PARTIES TO BE REGARDED—DISREGARD OF ERRONEOUS PARTS OF CONTRACT.—Where the owner of the cattle prepared the written contract, and brought it to the owner of the hay to sign, which he refused to do unless a provision were inserted that the owner of the cattle should take all of the hay in stacks or none, whereupon a provision for the payment of the hay used, at the rate of five dollars per ton, was stricken out, and a provision added as to taking all of the hay in the stacks, and providing for the measurement of it, and partial payments therefor, according to the number of tons found to be in the stacks, the fact that a provision of general similar import to the one erased still remained in another part of the contract, when all the circumstances show that the omission to erase that part of the contract was through mistake and oversight, and it was not intended to be left there, the intention of the parties must be regarded, and the erroneous part of the writing must be disregarded in the interpretation thereof, under section 1640 of the Civil Code.

ID.—ADMISSIBILITY OF PAROL EVIDENCE.—Parol evidence is admissible for the purpose of enabling the court to ascertain whether or not the principles embodied in sections 1640, 1649, or 1654 of the Civil Code are pertinent and applicable to the facts of any particular case.

ID.—SALE OF HAY IN STACKS—PROVISION FOR MEASUREMENT—PASSING OF TITLE.—In a contract for the sale and purchase of all the hay in nine stacks, at five dollars per ton, an agreement to ascertain the number of tons at some future time by weight and measurement does not affect the question as to the present passing of the title, but is only material as fixing the amount of money to be paid; and the hay being identified, and the price per ton agreed upon at the date of the contract, these are the only essentials necessary to constitute a valid sale.

ID.—REPUDIATION OF CONTRACT—RESALE OF HAY.—Where the owner of the cattle repudiated the contract for the purchase of the hay in stacks, and removed his cattle from the fields, it is not the duty of the vendor of the hay, after the title had passed to the vendee, to resell the hay to the best advantage possible for the benefit of the vendee.

ID.—ELECTION OF REMEDY.—Where a vendor has a right to sell personal property under the facts of any particular case he has the right to choose his remedy as between suing for the entire purchase price or selling the property and bringing an action for the difference, in case the sale results in a loss.

ID.—REPUDIATION OF CONTRACT BY PURCHASER—FAILURE OF VENDOR TO PROVIDE FEEDING-RACKS.—Where the contract for the feeding of the cattle and the purchase of the hay in stacks provided that, if it was necessary to save hay while feeding, feeding-racks were to be constructed, and it appears that the owner of the cattle suffered no loss or

damage by reason of the failure to furnish feeding-racks, any breach of
the contract in that respect is harmless, and does not afford ground for
repudiation of the contract; and, where the court finds that no necessity
for feeding-racks was ever known to the vendor, and that the cattle
were not removed from the premises because of the failure to furnish
feeding-racks, the purchaser cannot rely upon the absence of feeding-
racks as a ground for repudiation of the contract.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.

The facts are stated in the opinion of the court.

*Walker C. Graves,* for Appellant.

Lassing cannot recover, because he was the first to
break the contract, which was executory. (*Peasley* v.
*Hart,* 65 Cal. 524; *Barron* v. *Frink,* 30 Cal. 486.) Meas-
urement and weight were necessary to fix the identity
of the property sold. (*Beauchamp* v. *Archer,* 58 Cal. 431;
41 Am. Rep. 266; *Adams Min. Co.* v. *Senter,* 26 Mich.
73; *Stephens* v. *Santee,* 49 N. Y. 35; *Bradley* v. *Wheeler,*
44 N. Y. 495.) The breach of the agreement to make
the feeding-racks released defendant from his engage-
ment. (2 Addison on Contracts, top p. 1191, bottom p.
794; top p. 1220; bottom p. 831.) Parol evidence is not
admissible, where it is inconsistent with the contract,
which must be enforced according to its apparent terms.
(*Boyer* v. *Ausburn,* 64 Ga. 271; Browne on Parol Evi-
dence, 133; *Hutton* v. *Maines,* 68 Iowa, 650; *Thomas*
v. *Scutt,* 127 N. Y. 138; *Tracy* v. *Union Iron Works Co.,*
104 Mo. 193; *Sedgwick* v. *Sedgwick,* 56 Cal. 213; *Schroe-
der* v. *Schweizer etc.,* 60 Cal. 469; 44 Am. Rep. 61; *Cox*
v. *McLaughlin,* 63 Cal. 196; *Case* v. *Phœnix Bridge Co.,*
134 N. Y. 78.)

*Edward P. Cole,* for Respondent.

The title passed to the hay in stacks, since the parties
agreed to a present transfer, and the hay was identified.
(Civ. Code, sec. 1140; *Greenbaum* v. *Martinez,* 86 Cal.
459; *Blackwood* v. *Cutting Packing Co.,* 76 Cal. 217; 9
Am. St. Rep. 199; Benjamin on Sales, secs. 309, 311;

*Crofoot* v. *Bennett*, 2 N. Y. 260; *Groat* v. *Gile*, 51 N. Y. 431.) The duty of the vendor to sell is limited to executory contracts, and he has an election of remedy where title has passed, and is not bound to resell when title has passed. (*Dustan* v. *McAndrew*, 44 N. Y. 72; Benjamin on Sales, 3d ed., sec. 788; *Hunter* v. *Wetsell*, 84 N. Y. 555; 38 Am. Rep. 544; *Van Horn* v. *Rucker*, 33 Mo. 391; 84 Am. Dec. 53; Newmark on Sales, secs. 391, 404; Benjamin on Sales, 3d ed., secs. 788, 789.) Payment for the hay was not dependent upon the building of the racks. (*Donovan* v. *Judson*, 81 Cal. 338; *Front St. etc. R. R. Co.* v. *Butler*, 50 Cal. 577; *Pordage* v. *Cole*, 1 Saund. 320.) The erased part is to be considered in interpreting the contract. (*Hobart* v. *Dodge*, 10 Me. 156; 25 Am. Dec. 214.) Ambiguous contracts must be read in the light of the circumstances. (*Brannan* v. *Mesick*, 10 Cal. 106; Civ. Code, secs. 1636, 1647.) The promisor caused the uncertainty, and the contract must be interpreted against him. (Civ. Code, secs. 1649, 1654; Code Civ. Proc., sec. 1864; *Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 413; 88 Am. Dec. 337; *Noonan* v. *Bradley*, 9 Wall. 394, 407; *Insurance Cos.* v. *Wright*, 1 Wall. 456.) The contract must be construed in view of the acts and declarations of the parties. (*Hill* v. *McKay*, 94 Cal. 20; *Pico* v. *Coleman*, 47 Cal. 65; *Mulford* v. *Le Franc*, 26 Cal. 108; *Truett* v. *Adams*, 66 Cal. 218; *Topliff* v. *Topliff*, 122 U. S. 131.)

GAROUTTE, J.—The plaintiff, Lassing, was a farmer, and the owner of several fields of growing alfalfa. He was also the owner of nine stacks of hay, amounting to about 2,700 tons, which hay was situated in these various fields. Defendant James was the owner of a large number of cattle, and was desirous of securing both pasturage and hay upon which to feed them. Thereupon a written agreement was entered into between these two parties, which, among other things, contained the following covenants:

"That the said party of the first part (Lassing), in

consideration of the covenants, promises, and agreements on the part of the said party of the second part (James), hereinafter contained, hereby covenants, promises, and agrees to and with the said party of the second part, that the said party of the first part will take on to his inclosed alfalfa fields cattle aggregating about 800 to 1,200 head, to be pastured at 90 cents per head per month. If any cattle should remain on said pasture any fractional part of any month pasturage shall only be paid proportionately, and, when the pasturage becomes exhausted as not to fatten said steers, and some hay is fed, then the price is to be on the pasturage as the quantity of hay is fed, allowing 28 pounds of hay for a full 24 hours' feed for each head; for instance, if 14 pounds of hay is fed per day, then 45 cents per month per head is to be paid, and *pro rata* more or less in that proportion, as the case may be, until the cattle are entirely confined to the feeding-pens, and $5 per ton is to be paid for each and every ton of hay fed between this day and April 1, 1890.

"And the first party agrees to fence off around each bunch of stacks a sufficient number of large feeding-pens, and sufficiently strong to hold the cattle without fear of them getting away; also to furnish a good, comfortable, dry house for the use of the men engaged in feeding and caring for said stock; also to furnish a good supply of water troughs in each pen, with pipes, etc., from the tanks, wells, and pumps, to be equipped and furnished in good order, and sufficient to plentifully water all of said cattle at all times, and, if it is found necessary to save hay while feeding, feeding-racks are to be made around the fence. Cattle may be taken out and others put in at any time.

"And the said party of the second part, in consideration of the said covenants, promises, and agreements on the part of the said party of the first part hereinafter contained, covenant, promise, and agree to and with the party of the first part, that the said party of the second part will, on turning cattle on said alfalfa fields,

pay $2,500 as the first payment on the hay, and at the end of each and every month pay the amount of all the pasturage used during the months just past.

" On or before November 1, 1889, both of the parties hereto is to cut off ten feet from the end of an average stack, and weigh it, and average the balance by that, and, as soon as the amount is found, one-half of all the money it comes to is to be paid, and seventy-five days thereafter one-half of the balance due is to be paid, and at the end of the time all is to be paid."

In pursuance of the aforesaid agreement James placed his cattle upon the fields of Lassing, where they remained about six weeks, when he removed them therefrom, and declined to be further bound by the terms of the contract. This action was brought by Lassing to recover the value of the hay at $5 per ton, and also the price of the pasturage as agreed upon. The plaintiff credited defendant with the payment of $2,500, made at the time the contract was entered into, and also allowed him the further sum of $3,423, paid to plaintiff by an insurance company for a loss of a portion of the hay by fire, plaintiff having taken out a policy thereon after James removed his cattle from the premises. In addition to the denials of the answer defendant set out a cross-complaint, claiming damages to the amount of about $6,000 for injury to the cattle by reason of plaintiff's breach of agreement in the manner in which he cared for them. The cross-complaint was held to be unsupported in the evidence by the trial court, and judgment went for plaintiff. This is an appeal from such judgment and from the order denying a motion for a new trial.

There is no question raised by appellant James as to the amount allowed by the court for pasturage of the cattle, but the chief bone of contention appears to be as to the amount of hay that James really purchased; and that brings us to a construction of the agreement itself. It is contended upon the one side that James was only to pay for the hay used in feeding his cattle; while it is

insisted upon the other that James bought the entire nine stacks of hay, and that his liability to pay therefor was incurred whether or not the hay was actually fed to the cattle.    Upon the face of the contract there seems to be some inconsistency as to its provisions in this regard.    In one part it is provided that "five dollars per ton is to be paid for each and every ton of hay fed between this date and April 1, 1890"; while the last clause provides in terms for the measuring of the entire nine stacks of hay for the purpose of determining the number of tons therein, and further provides for partial payments therefor, and the respective times when such payments are to be made, and also fixes the date of final payment of the balance due.

The contract is inartificially drawn, and from all points indicates the handiwork of a layman.    At the same time the inconsistency or repugnancy present in the two portions of the contract cited is more seeming than real.    These two provisions are certainly not directly conflicting.    James, as indicated by the first clause quoted, agreed to pay for all the hay used prior to April 1, 1894.    The second clause quoted is simply broader, and reaches further, for by that clause he agrees to pay for all the hay in the nine stacks.    Section 1858 of the Code of Civil Procedure, in speaking as to the interpretation of contracts, provides that "Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all," and by virtue of this canon of construction we avoid a seeming contradiction in these two provisions, and allow them both to stand.

There are also provisions of the Civil Code which, when applied to the facts here presented, overthrow appellant's position as to the true construction of this contract.    Section 1649 provides: "If the terms of a promise are in any respect ambiguous or uncertain it must be interpreted in the sense in which the promisor believed at the time of making it that the promisee understood it."    If James' promises of payment, when

taken together, are ambiguous and uncertain, then under the oral evidence of Lassing there is no question but that both parties understood that James was buying all the hay at $5 per ton. Lassing not only believed such to be the contract, but James, the promisor, believed Lassing, the promisee, so understood it. These conditions are conclusively shown by Lassing's testimony, and James, when upon the witness-stand, in no way offered contradictory evidence.

Section 1654 of the Civil Code provides: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party." James is the promisor, and by virtue of this section of the code he is presumed to be the party who caused the uncertainty, but beyond this he was the party who actually caused it, for he prepared the contract, and, therefore, it should be interpreted most strongly against him.

Again, section 1640 provides: "When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties such intention is to be regarded, and the erroneous parts of the writing disregarded." We think the provisions of this section may be properly invoked in behalf of respondent's contention. James prepared the written contract in San Francisco, and brought it to Lassing at his home for him to sign. At that time the contract did not contain the provision providing for the measurement of the hay and the partial payments therefor, according to the number of tons found to be in the stacks, but it contained a provision providing for the payment of all the hay used, at the rate of $5 per ton. The contract thus presented to Lassing he refused to sign, insisting that James should take all the hay, or none. Thereupon James, in compliance with Lassing's demands, erased from the contract as presented the provision as to paying for the hay used, and added thereto the provision

as to taking all the hay.  It now appears that a provision of general similar import to the one erased still remained in another portion of the contract; but the circumstances all show that it was an oversight upon the part of both parties in not also striking that provision from the contract, and it is evident that it was omitted to be done purely through mistake.  It was not intended to be left there, and, tested by section 1640, should be disregarded in the interpretation thereof.

The facts and circumstances surrounding the making of this contract appear in the record by the uncontradicted evidence of the respondent, Lassing.  Appellant in his reply brief strenuously attacks the rulings of the court in admitting this evidence.  It is claimed that such parol evidence was inadmissible, as tending to contradict, add to, and vary the terms of the written contract.  But we are clear to the contrary.  The contract has not been changed by Lassing's evidence.  Nothing has been added thereto.  No term has been nullified or even modified.  The sections of the code we have quoted relating to the construction and interpretation of contracts contemplate the introduction of parol evidence.  For it is only upon the introduction of such evidence that it can be ascertained whether or not the principles of law embodied in those sections are pertinent and applicable to the facts of any particular case.  We conclude that appellant agreed to take all the hay situated in the nine stacks.

The clause of the contract as to the measurement of the hay and the payment therefor is as follows: " On or before November 1, 1889, both of the parties hereto is to cut off ten feet from the end of an average stack and weigh it, and average the balance by that, and, as soon as the amount is found, one-half of all the money it comes to is to be paid, and seventy-five days thereafter one-half of the balance due is to be paid, and at the end of the time all is to be paid."

Appellant contends that this clause, standing alone, is simply an executory agreement for the sale and pur-

chase of all the hay in the nine stacks, and that, consequently, the title to the hay has never passed to James. It is insisted that the contract was executory in this, that the hay was never measured and the amount ascertained, as provided in the contract, and that the measurement and determination as to the amount was a condition precedent to the passing of the title. We are clear that the agreement to ascertain the number of tons of hay at some future time by weight and measurement in no way affected the question as to the present passing of the title. All the hay in the nine stacks was purchased at the rate of $5 per ton. The number of tons was immaterial as bearing upon the question of a valid transfer. The final determination as to the number of tons was only material as fixing the amount of money to be paid. The subsequent measurement and ascertainment of the exact number of tons could in no way furnish any grounds for the rescission or repudiation of the sale by either party. The hay was identified, and the price per ton agreed upon, at the date of the contract, and these only were the essentials necessary to constitute a valid sale, for the sale was made regardless of the amount of the hay, and thus necessarily became complete and perfect when the contract was entered into and part payment made thereunder. In *Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212, 9 Am. St. Rep. 199, a case involving the principle here discussed, this court said: " Some of the American cases are not in accord with the rule laid down by Mr. Benjamin in this, that, *if the goods are identified,* it does not matter that weighing or measuring is necessary to ascertain the price or the quantity, and this seems to be the law in California, for the Civil Code contains the following: ' SEC. 1140. The title to personal property sold or exchanged passes to the buyer whenever the parties agree upon a present transfer, and the thing itself is identified, whether it is separated from other things or not.' "

After James repudiated the contract, removed his cattle from the fields, and left the hay in the stacks, ap-

pellant contends that it was the duty of Lassing to sell the hay to the best advantage possible, and, if it failed to bring $5 per ton, then the right accrued to recover from James the difference. In a case like the present, where the title to personal property has passed, there is no obligation resting upon the vendor to resell. In many cases he would have no right to resell, and possibly would be guilty of an act of conversion if he exercised any such dominion over the property; but, upon the facts of this case, under any principle of law which appellant might advance, Lassing had the right to choose his remedy, as between suing for the entire purchase price or selling the property and bringing an action for the difference in case the sale resulted in a loss. (*Hunter* v. *Wetsell*, 84 N. Y. 555; 38 Am. Rep. 544; *Dustan* v. *McAndrew*, 44 N. Y. 72; *Van Horn* v. *Rucker*, 33 Mo. 391; 84 Am. Dec. 53.)

It is insisted that Lassing so materially failed to carry out the covenants of the contract upon his part to be performed that James was justified in repudiating the contract and withdrawing from under its provisions. Of course such conduct upon the part of James could only be justified upon the principle that the covenants to be performed by the respective parties were entirely mutual and dependent upon each other. And, in view of what we have already said as to the purchase of the hay, possibly James' only remedy for a breach of the contract would be an action of damages in the nature of a recoupment; but we do not deem it necessary to enter into a discussion as to the mutuality and dependency of these respective covenants, for we think no material and substantial breach of the contract was ever committed by Lassing. By its terms he was to do various things, and, in pursuance of his agreement, it is conceded that he performed all of the things to be done by him, and at considerable labor and expense, except in a single respect. The contract, after requiring Lassing to furnish a plentiful supply of water for the cattle, continues: "And, if it is necessary to save hay

while feeding, feeding-racks are to be made around the fence." It is now claimed that Lassing failed to live up to his contract in this regard, and the alleged breach of this provision of the contract is relied upon to furnish material sufficient to demand a reversal of the judgment. Upon this issue the court made the following finding of fact: "That it was never found necessary on the 18th day of October, 1889, or at any time, to furnish feeding-racks around the fence to save hay while feeding the cattle of defendant, nor was any necessity for feeding-racks ever known to plaintiff, nor did plaintiff wholly or at all omit, fail, neglect, or refuse to furnish the same, nor was defendant compelled to, nor did he, remove any of his cattle from plaintiff's land or premises because of the failure of plaintiff to build said racks, nor did defendant, nor was he compelled to, remove any of his cattle by any act of plaintiff, nor did defendant suffer any loss, injury, or damage in any sum of money by any act of plaintiff, or by any absence of feeding-racks, or at all."

As to its indefiniteness the foregoing covenant of the contract stands fully at par with the other provisions, but, conceding to it all the force and effect that appellant claims, and that the provision not only demanded that Lassing should furnish feeding-racks when necessary, but that a mistake in judgment upon his part as to the time when that necessity arose would furnish grounds for a repudiation of the contract upon the part of James, however innocent Lassing might be in making such mistake, still the finding of. fact which we have quoted stands as a bar to a favorable conclusion to appellant upon this contention. The finding in effect declares that: 1. It was never necessary to furnish the feeding-racks; 2. That appellant did not remove his cattle from plaintiff's lands because of the failure to furnish said feeding-racks; 3. That appellant suffered no loss or damage by reason of the absence of such racks. This finding of fact, as we look upon it, in each of its particular branches is fatal to appellant's claims,

if supported by the evidence; for, aside from that por-
tion of the finding declaring in effect that racks were
not necessary, it is found from the evidence that James
deserted the premises and removed his cattle therefrom
for other causes—causes in no way attributable to Las-
sing, and for which he was in no way responsible.    If
this portion of the finding be true, then James cannot
now rely upon a breach of the contract as a ground for
repudiation, which in his mind at the time in no way
formed an element entering into the attempted repudi-
ation or rescission upon his part.    Again, it is found
that he suffered no loss or damage as to his cattle by
reason of the failure of Lassing to furnish the racks.
If this be so, James was not excused in law from carry-
ing out all the covenants upon his part to be performed.
If in fact he suffered no injury or damage by a breach
of the contract such breach was harmless, and gave
him no cause of complaint.    Certainly no action of
damages could be based thereon by him; neither would
it be such a substantial default as to afford grounds for
a rescission or repudiation.

While upon some of these questions there may be
said to be a substantial conflict in the evidence, yet we
think every branch of this finding of fact has substan-
tial support in the evidence found in the record.    It
will be observed that feeding-racks were to be furnished
when it became necessary "to save hay."    Hence, it is
evident that a breach of this provision could only result
in damage to James for a loss of hay.    Yet he makes
no claim in his complaint for a loss of that character,
but attempts to recoup in damages for a loss of weight
in the cattle by a lack of sufficient pasturage and hay.
As to damages claimed in the nature of recoupment, it
would almost seem conclusive against the claim to such
that there is nothing whatever in the contract requiring
Lassing to furnish sufficient feed to keep the stock in
prime condition.    When the contract was made the
feed was upon the ground, both pasturage and hay, and
it was James' feed, regardless of quality or quantity,

and was to be fed by him at such times and quantities as he saw fit. There is some claim that James subsequently by parol made Lassing his agent to take charge of the cattle and care for them. Conceding as much, a neglect of duty by Lassing under such contract, and damages resulting therefrom, would be a matter entirely foreign to any question of feeding-racks. In addition to and beyond all this the evidence fully supports the finding that the lack of feeding-racks in no way was the cause of damage and loss to James, conceding such damage and loss to have occurred. Again, the finding of fact to the effect that the absence of feeding-racks was not the cause of the removal of the cattle by James, finds ample support in the evidence. Owing to the warm, copious, and unexpected rains of the months of September and October, the fields had become soft and miry, which fact interfered largely with the welfare of the cattle, and furnished a strong argument for James' action in removing them. And, as an additional cause for their removal, and probably the controlling one, these same warm rains had caused a growth of grass upon James' own land fully sufficient for all his needs and purposes.

Conceding that an error of judgment upon Lassing's part as to the date when he was required to furnish the racks is fatal to his case, still, under the evidence, the finding of the court to this point has support. A mistake of judgment as to this particular time, entailing upon him the severe penalties here claimed, should not be held against him unless clearly apparent from the evidence. We think his conduct and acts in this regard should be liberally interpreted in his favor; and so interpreted we conclude the breach, if one occurred, was not a substantial one, but purely technical. Weeks before the cattle were removed Lassing had made arrangements with a dealer to have the lumber upon the ground to build the racks upon twenty-four hours' notice. He had fed the hay for two days only when James came upon the ground and ordered an immediate

removal of the cattle. Under the written contract it is clearly contemplated that James should feed the hay, and the inference naturally arises that Lassing would be notified when racks were required, but under a subsequent parol agreement Lassing was hired to feed the hay, and, as stated, he had only fed it two days when James came upon the ground and ordered an immediate removal of the cattle. It thus appears to have been left to Lassing alone to determine when hay should be fed, and for this reason the novel conditions arise that, if Lassing had decided not to feed hay during these few days, then the feeding-racks would not have been required, and no breach would have occurred. Lassing states that he placed the hay upon the high and gravelly ground; that he did not think the time had arrived for the racks to be used; that neither James nor any of his men had requested or suggested to him to make and place them; that immediately prior to the removal of the cattle James neither demanded that he furnish the racks nor notified him that he was removing the cattle, for the reason that they were not furnished, and that he could and would have furnished them within a very few days if James had so requested. Upon such a state of facts we think this portion of the finding of the court should be upheld.

For the foregoing reasons we conclude the judgment and order should be affirmed, and it is so ordered.

HARRISON, J., VAN FLEET, J., McFARLAND, J., TEMPLE, J., and HENSHAW, J., concurred.

Rehearing denied.