[Civ. No. 124.   Third Appellate District.—May 15, 1906.]

## GRANGE COMPANY, Appellant, v. FARMERS' UNION AND MILLING COMPANY, Respondent.

SALES—SHIPMENT—BANKRUPTCY OF PURCHASERS—DELIVERY TO AGENT —END OF TRANSIT—STOPPAGE.—The right of stoppage of grain sold and shipped to the purchasers, while in transit, on account of the bankruptcy of the purchasers, does not exist, where the grain has been delivered by order of the purchasers to their agent appointed to receive delivery, and not employed merely to forward the property to them, the circumstances being such as to show that the delivery to the agent was intended to be a final delivery to the pur-

chasers. In such case the transit is at an end, and final delivery to the purchasers cannot be stopped.

ID.—PLEDGE TO AGENT IMMATERIAL TO SHIPPER.—The fact that the agent, who was not employed merely as a forwarder, was engaged in the warehouse business, and loaned money to the purchasers on the grain in the warehouse, does not render a secret pledge of the grain to secure such loan material to the shipper, who has no right of action against such agent for refusal to deliver back the grain delivered to such agent by the shipper, whether the agent had a lien thereon or not.

ID.—RETURN OF SHIPPING RECEIPTS AFTER PETITION IN BANKRUPTCY.— If it be admitted that in any case the return of the shipping receipts by the purchasers to the shipper can in any case operate as a symbolical redelivery of, or refusal to accept the goods shipped, it could not have that effect when the shipping receipts were returned after the filing by the purchasers of a petition in bankruptcy. The legal effect of such petition was to place the grain delivered, as well as all other property of the purchasers, in *custodia legis* for the benefit of all creditors of the bankrupt firms, and they were powerless thereafter to make a symbolical redelivery of the grain, or to repudiate the act of their agent in accepting possession thereof.

ID.—TRANSFER OF TITLE BY SHIPMENT.—Where the course of business between the buyer and seller, and the conduct of the seller and every circumstance attending the sale of the grain, indicates an intention on the part of the seller to transfer the title to the grain at the time of the shipment, the title thereto then vested in the buyer, under the express provisions of sections 1140 and 1141 of the Civil Code.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. W. D. Nutter, Judge.

The facts are stated in the opinion of the court.

Dennett & Walhal, for Appellant.

Nicol & Orr, for Respondent.

McLAUGHLIN, J.—On September 8, 1904, the appellant corporation sold two carloads of wheat, and one carload of oats to A. B. Costigan & Company of San Francisco, who directed that the grain be shipped to them, care of the Farmers' Union and Milling Company, at Stockton. The grain was

loaded and shipped according to directions, and the shipping receipts were sent to the purchaser's office in San Francisco. The wheat was shipped on September 12th and the oats two days later. On the last-mentioned day the appellant issued its draft upon A. B. Costigan & Company, payable to the First National Bank of Modesto for the sum of fifteen hundred dollars, and on September 15th, this draft was returned after dishonor and protest. A. B. Costigan & Company filed their petition in bankruptcy about 4 o'clock on September 16th, and three-quarters of an hour thereafter the shipping receipts were, pursuant to directions previously given, mailed to the appellant at Modesto. Upon receiving notice that the draft had been protested, the vice-president and assistant manager of appellant went to San Francisco, and was informed of the bankruptcy of Costigan & Company, and of the return of the shipping receipts. He returned to Modesto, procured the shipping receipts and went to Stockton, where, on September 17th, he notified the railroad agent not to deliver the grain to respondent, but was informed that it had already been delivered. There can be no question that the grain had been delivered and unloaded by respondent before appellant took any steps to prevent its delivery according to the billing instructions, which required that it be delivered to respondent. The carload of oats was delivered after the wheat. It reached Stockton on September 15th, was placed in the private yard on the private tracks of respondent on the 16th, and unloaded on the morning of the 17th *before* appellant had notified the railroad agent not to deliver it, and before said agent had communicated with respondent.

The business of respondent with A. B. Costigan & Company was generally a warehouse business. At times respondent loaned them money on grain in the warehouse. On July 13th, 1903, an agreement was entered into between A. B. Costigan and respondent, by the terms of which all grain and grain bags, stored with the latter, became pledged as security for advances made to A. B. Costigan & Company. Just prior to the delivery of the grain in question, the respondent made certain shipments of grain for their pledgor with the distinct understanding that it was to be replaced with grain to be shipped by appellant within a few days. At no time subsequent to July 13, 1903, was respondent acting as the mere

agent of A. B. Costigan & Company to forward property to the latter as consignee.  There is abundant evidence to show that according to the customary and unvarying business methods and usage obtaining between these two concerns, the delivery of this grain to respondent constituted a complete and final delivery to Costigan & Company.  Of course there is a conflict in the evidence on this and other vital points, but every presumption and intendment must be indulged in favor of the action of the trial court, and hence we are compelled to accept the evidence supporting the findings and judgment as absolutely true.

The first point urged by appellant is that the grain was stopped in transit and that appellant by recaption had resumed possession thereof before final delivery.  "A seller or consignor of property, whose claim for its price or proceeds has not been extinguished, may, upon the insolvency of the buyer or consignee becoming known to him, after parting with the property, stop it while on its transit to the buyer or consignee, and resume possession thereof."  (Civ. Code, sec. 3076.)  "The transit of property is at an end when it comes into the possession of the consignee, or into that of its agent, unless such agent is employed merely to forward the property to the consignee."  (Civ. Code, sec. 3078.)  "Stoppage in transit can be effected only by notice to the carrier or depositary of the property, or by taking actual possession thereof."  (Civ. Code, sec. 3079.)

That respondent was the agent of the consignee is shown not only by the whole course of business between them, but by the conduct of appellant in billing the grain to be delivered to respondent at Stockton.  It is further shown by the conduct of appellant's agent who went to Stockton and endeavored to prevent delivery of the grain according to the terms of the bill of lading.  Every act of appellant's agents before and after delivery of the grain to respondent, unerringly and convincingly indicates full knowledge that the grain was to be delivered to respondent and stored in its warehouses at Stockton, and that such delivery was considered as a final delivery to Costigan & Company.  This is evidenced by the very terms of the bill of lading, by the draft pursuant to business usage between seller and purchaser, and by the steps taken to exercise the right of stoppage in transit, which, but for tardiness, would have been all-sufficient.  In all of this record we can

find nothing indicating a belief that respondent was a mere forwarding agent. If such belief had been entertained, the ordinary, usual and legal course would have been to give immediate notice to respondent, as depositary of the property, not to forward the same to the consignee. Instead of giving such notice, however, two notices were served, both notifying respondent that appellant held the shipping receipts, and demanding the warehouse receipts. This is hardly reconcilable with the theory that respondent was regarded as a mere forwarding agent, or that delivery to respondent was not regarded as a delivery to the consignee. The context of both notices, and particularly the one dated September 22d, clearly demonstrates that appellant entertained no such idea. Much is said about the secret pledge claimed by respondent, but in the view we take of the matter, the existence or validity of this pledge concerns neither the appellant nor this court. This action is brought upon the theory that appellant owned and had a right to the possession of this grain, because it was stopped in transit before delivery to the consignee. If it was delivered to an agent not employed merely to forward the property to the consignee, before the right of stoppage *in transitu* was exercised, then appellant must fail in this action whether respondent has a lien or not. Having reached the conclusion that the evidence is sufficient to support the implied finding that it was so delivered, it is unnecessary to consider the intricate and interesting questions which would be presented if a mere forwarding agent was attempting to enforce a pledge under the circumstances disclosed by this record.

The second point urged is that the return of the shipping receipts was a symbolical redelivery of the grain, or at least a refusal to accept it. We do not think it had any such effect. At the time such receipts were returned the grain had been delivered to the consignee, through its agent, to whom it was shipped. Most of it had been unloaded and stored, and the remainder was in a car which had been delivered by placing it on the private tracks, in the private yard of the respondent. It was, through such delivery, in the possession of the consignee, whose property it became beyond power of recall by the seller. If it be admitted that the mere return of the receipts issued by the carrier to the shipper can in any case operate as a symbolical redelivery of, or a refusal to accept, the goods shipped, it certainly could not have such effect under

the circumstances disclosed by the record before us. The legal status of the property had been fixed by its delivery to the respondent as agent of the consignee, and no act of the latter could change or vary the legal effect of such delivery. Waiving all other considerations, the consignee, after the filing of the petition in bankruptcy, was absolutely without power to restore to appellant the property interest in the grain, which had previously been delivered. The legal effect of filing such petition was to place the grain and other property of A. B. Costigan & Company in *custodia legis* for the benefit of all creditors of the bankrupt firm. For this, if for no other reason, the consignee was powerless to make a symbolical redelivery of the grain, thus revesting the legal title thereto in appellant, and was equally powerless to repudiate the act of its agent in accepting possession of the same. (U. S. Bankruptcy Act, July 1, 1898, c. 541, secs. 1, 3, 18, subd. G, §§ 29, 79; 30 Stats. 544, 546, 551, 554, 565, [U. S. Comp. Stats. 1901, pp. 3418, 3422, 3429, 3433, 3451].) Nothing the bankrupt consignee should do at that late hour would or could vest the legal, beneficial interest or title to the grain in the shipper, who had completely parted with possession of the property, and had lost his right of recaption. There is another view of the case thus far unnoticed which is fatal to appellant's claim. The course of business between the buyer and seller, the conduct of the latter, and every circumstance attending the sale of the grain, indicates an intention on the part of appellant to transfer the title to the grain at the time of shipment. Under the express provisions of the code this vested the title to the property sold in the buyer. (Civ. Code, secs. 1140, 1141; *Lassing* v. *James,* 107 Cal. 356, [40 Pac. 534]; *Greenbaum* v. *Martinez,* 86 Cal. 463, [25 Pac. 12]; *Blackwood* v. *Cutting P. Co.,* 76 Cal. 216, [9 Am. St. Rep. 199, 18 Pac. 248]; *Crocker* v. *Field,* 93 Cal. 534, [29 Pac. 225]; *Habenicht* v. *Lissak,* 77 Cal. 144, [19 Pac. 260].)

It results from the foregoing that as plaintiff's case necessarily rested on its ownership and right to the possession of the grain, the findings and judgment to the contrary are fully supported by the evidence, and therefore the judgment and order are affirmed.

Buckles, J., and Chipman, P. J., concurred.