[L. A. No. 2172. Department Two.—December 31, 1908.]

## H. M. PAYNE et al., Respondents, v. VICTORINE NIVARD NEUVAL et al., Appellants.

GRANT OF INCORPOREAL HEREDITAMENT—RIGHT TO WORK AND EXTRACT MINERALS—ABANDONMENT BY GRANTEE.—An instrument executed by an owner of land, as follows: "In consideration of one dollar to me paid by F. N. . . . and the further sum of twenty cents per ton, I, the undersigned, grant to said F. N. all the bituminous rock, petroleum, asphaltum and other mineral which he may choose to mine, quarry and take from my land, (describing it,) . . . In case said land fails to produce such mineral in paying quantities or of good quality said F. N. may upon thirty days' notice given to me in writing, abandon and relinquish to me all right hereby conferred and granted . . . F. N. agrees to take at least three hundred tons a year or to pay the royalty on that amount whether taken or not,"—is not to be construed as a grant of the title in fee to all the mineral located upon the land described, but merely as a grant of a right in the nature of an incorporeal hereditament, and that such right was abandoned by the grantee by his failure, for a period of thirteen years, to either extract minerals or pay the royalty.

ID.—INTERPRETATION OF AGREEMENT — UNCERTAINTY — CONSTRUCTION AGAINST PERSON CAUSING — SURROUNDING CIRCUMSTANCES. — Any uncertainties existing in said agreement are to be interpreted most strongly against the grantee, he being the one who prepared the instrument and caused the uncertainties to be present, and evidence of the circumstances surrounding its execution is admissible in aid of its interpretation.

ID.—NOTICE OF ABANDONMENT.—It was not necessary to constitute an abandonment of the right secured by such agreement that the grantee should give notice thereof in writing. Such notice might be waived by the grantor.

ID.—WANT OF EQUITY—TENDER OF ROYALTY—ENHANCED VALUE OF LAND.—After the expiration of such thirteen years, the grantee would not be permitted to enforce any right secured to him by said agreement, without doing equity by a tender of payment of the royalty provided for therein. And evidence is admissible, under appropriate allegations, that the land during such period had enhanced in value by reason of the discovery of oil, in order to further show the want of equity in the assertion of the claim of the grantee.

ID.—SUBSEQUENT PURCHASE OF LAND—REDUCTION IN PRICE.—A subsequent purchaser of such land, by obtaining a reduction in the purchase price thereof by reason of the existence of such agreement, did not thereby admit that the agreement constituted a grant of the title in fee of such minerals.

ID.—QUIETING TITLE—IMMATERIAL ERROR IN ADMISSION OF EVIDENCE OF ABANDONMENT.—In an action by the successors of such grantor, to quiet their title to such land, it was not a material error to admit in evidence a conversation between the grantor and the superintendent of the grantee with reference to the abandonment, when there was abundant evidence of abandonment without such conversation.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order refusing a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan, Theo. J. Roche, and Thos. A. Norton, for Appellants.

C. P. Kaetzel, Wm. Shipsey, and Frank P. Deering, for Respondents.

MELVIN, J.—This is an appeal from a judgment for plaintiffs and from an order denying the motion of defendants for a new trial. The action was one to quiet title, and around a certain document set forth in the complaint cluster all of the problems presented by this appeal. The instrument in question was executed by the grantors of plaintiffs in favor of defendants' decedent. It is in substantially the following language:—

"In consideration of one dollar to me paid by F. Nivard Neuval, the receipt of which is hereby acknowledged, and the further sum of twenty cents per ton, I, the undersigned, grant to said F. Nivard Neuval all the bituminous rock, petro-

leum, asphaltum and other mineral which he may choose to mine, quarry and take from my land in San Luis Obispo County, State of California. (Here follows a description of the property.) Together with the right of free ingress and egress and also the right to erect and maintain on said land stables, shed, house, sidetrack and other structures necessary to the business of mining and transferring such mineral to market. In case said land fails to produce such mineral in paying quantities or of good quality said F. Nivard Neuval may upon thirty days' notice given to me in writing, abandon and relinquish to me all right hereby conferred and granted, and whereas I have a portion of my land cultivated and have planted vine and an orchard such portion now improved will be free from any mining and quarrying. F. N. Neuval agrees to take at least three hundred tons a year or to pay the royalty on that amount whether taken or not."

This instrument was duly acknowledged and recorded on April 12, 1890. Immediately thereafter F. Nivard Neuval entered upon Bickmore's land, quarried and took away twenty-seven tons of bituminous rock, after which he removed his machinery, both from that and from an adjoining tract of land, and never pursued any further mining or other operations in that vicinity. However, he paid the royalty mentioned in the agreement up to April, 1892. After that no more royalty was paid by or for Mr. Neuval. It was admitted by the parties that on the seventeenth day of October, 1905, Neuval died testate, being at the time of his death a resident of the city and county of San Francisco; also that by decree of distribution, given, made, and entered in the superior court of said city and county, all of the property belonging to said deceased at the time of his death was distributed to the appellants. Appellants' counsel contend that the instrument in question constituted a grant of all minerals, including petroleum and asphaltum, contained in the premises involved in this action; that no adverse possession has been shown; that if we regard the instrument as one which created an easement, title by adverse possession could not be acquired; and that assuming an abandonment, plaintiffs waived it by demanding and obtaining a deduction in the purchase price of the property after learning of the existence of the agreement.

Great stress is placed by counsel for appellant upon the word "grant" used in the agreement here considered. With great force and ingenuity they argue that, although no words of inheritance or succession are used none are necessary (Civ. Code, sec. 1072) and that as "a transfer vests in the transferee all the actual title to the thing transferred which the transferrer then has unless a different intention is expressed or is necessarily implied," (Civ. Code, sec. 1083) therefore the use of the word "grant" with no immediately connected qualifications, transferred to the predecessor of appellants the title in fee to all the minerals located upon the property in question. But an examination of the instrument reveals the fact that it possesses other characteristics not usually accompanying absolute grants of minerals and mines. There is a provision for abandonment by Neuval of the property and of the mineral wealth therein contained upon the giving of notice in writing. There is also a provision for the payment of royalty for the amount of mineral removed. It will thus be seen that the instrument in question has some of the characteristics of a lease. It has been held that the word "royalty" is "perhaps the most appropriate word where rental is based upon the quantity of coal or other mineral that is or may be taken from the mine." (*Raynolds* v. *Hanna,* 55 Fed. 800.) In the same case the agreement considered was declared to be a lease, although it did contain the word "grant." It will also be noted that the words relied upon as constituting a grant do not convey the minerals *in situ,* but only such as Neuval "may choose to mine, quarry *and* take from" the land. Perhaps it will not be necessary to classify with technical accuracy the agreement before us. We may employ the language used by the supreme court of Indiana in *Heller* v. *Dailey,* 28 Ind. App. 555, [63 N. E. 493] : "We do not regard the contract in suit as a grant of land or as a lease properly so called, but do regard it as a grant of a right in the nature of an incorporeal hereditament . . . under whatever technical common-law term it may most properly be classed." Having some of the features of a grant and some of a lease, this is a contract which "may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (Civ. Code, sec. 1647.) It was completely drawn up and was taken, thus prepared,

CLV Cal.—4

by Neuval to Bickmore, an illiterate person, who signed by his mark. Bickmore testified that Neuval stated he wanted a lease. Bickmore supposed he was executing a lease. The existing uncertainties are to be interpreted most strongly against Neuval, who prepared the agreement and caused the uncertainties to be present. (*Lassing* v. *James,* 107 Cal. 355, [40 Pac. 534]; *Yoch* v. *Home Mutual Ins. Co.,* 111 Cal. 508, [44 Pac. 189]; *Welch* v. *British American etc. Co.,* 148 Cal. 227, [113 Am. St. Rep. 223, 82 Pac. 964].) Considering the instrument in its entirety, the circumstances under which it was drafted and executed, and the conduct of the parties to the agreement, it cannot be reasonably contended that Neuval and his heirs were to have the right to preserve dominion over these deposits perpetually and after failure to work the mines or pay the royalty for thirteen years were to have the right to assert an adverse claim to the minerals upon Bickmore's land. Certainly their conduct exhibits great lack of diligence. The following language used by this court in *Acme Oil & Mining Co.* v. *Williams,* 140 Cal. 681-684, [74 Pac. 296, 297], is pertinent: "The sole consideration usually moving the lessor in extending oil leases is, and the only consideration for the particular lease involved here was, the royalties the lessor would receive from proper and continuous pumping of oil, after it had been developed in paying quantities. These leases are only valuable on development, and are then only valuable to both parties, to the extent that the product may be secured and disposed of, and when the only consideration for the lease is the share which the lessor will obtain of what is produced, there is always an implied covenant that diligence will be used toward such production." (See, also, *Petroleum Co.* v. *Coal & Coke Mfg. Co.,* 89 Tenn. 391, [18 S. W. 65].) In *McIntosh* v. *Robb,* 4 Cal. App. 486, [88 Pac. 517], where the district court of appeal was considering a mining contract, the following language is used: "In contracts of this character there is an implied covenant for diligent search and operation, and under such a contract the lessee is bound to proceed with his mining operations with reasonable diligence." All of Neuval's acts, after his brief mining activity, indicated his failure at that time to find bituminous rock or other mineral in valuable quantities. That his intention was to abandon the project

can scarcely be doubted. True, he did not give notice in writing, but Bickmore could waive such notice, and would not a court properly find that he had waived it if, after thirteen years of inactivity in the matter, he should sue the Neuval heirs for the annual royalty mentioned in the agreement? In *Calhoon* v. *Neely,* 201 Pa. St. 97, [50 Atl. 967], the court said, speaking of a lease for fifteen years: "An unexplained cessation of operations for the period involved" . . . (nine years) "gives rise to a fair presumption of abandonment, and, standing alone and admitted, would justify the court in declaring an abandonment as matter of law." The conclusion is inevitable that all rights of the Neuval heirs were extinguished by abandonment of the privileges which existed under the contract. In view of this determination it is necessary to comment but briefly upon respondents' point that the appellants failed to do equity because they did not tender payment of the royalty before asking for the enforcement of the contract. We think the point well taken. It has been held in this state that a mortgagor cannot maintain an action in ejectment against a mortgagee in possession, nor quiet title to the mortgaged premises, without paying the debt, even though it was outlawed. (*Spect* v. *Spect,* 88 Cal. 443, [22 Am. St. Rep. 314, 26 Pac. 203] ; *Brandt* v. *Thompson,* 91 Cal. 458, [27 Pac. 763].) The principle announced in those cases would apply with equal force here. There is no merit in the point that the plaintiffs, by accepting a deduction in the purchase price of the property because of the existence of the recorded contract, recognized the validity of the claim of appellants. For aught that appears here, the purchasers of this land may have demanded a reduction in the price asked by Mr. Bickmore because they anticipated the expense of litigation—a fear not altogether without foundation. In the case of *McConnell* v. *Pierce,* 210 Ill. 627, [71 N. E. 622], cited by appellants' counsel in this behalf, the deed under which plaintiff claimed title was made "subject to the F. H. Haley lease." In this case there was no such provision in the deeds under which plaintiffs' claim of title is asserted. We see no material error in the admission, over appellants' objection, of testimony regarding the conversation between Bickmore and Sisco, Neuval's superintendent, with reference to the abandonment. Without that conversation there was abun-

dant evidence of abandonment, and we do not see how the
result could have been changed by Sisco's testimony. The
following questions addressed to Bickmore were permitted, in
spite of objection: 1. "What right did Mr. Neuval tell you
he desired to secure by this instrument in these premises?"
2. "What interest in the minerals mentioned in there did he
tell you he wanted?" 3. "When Neuval came there with that
instrument what did he tell you he wanted?" 4. "What kind
of an instrument did he tell you he wanted when he came
there?" To the first question the reply was, "Oh, I supposed
getting out rock to lay down the sidewalks and streets." To
the second he answered, "He didn't tell me he wanted any
interest, he pay me so much a ton working out the rock,
bituminous rock, what he called it asphaltum." To the third
the witness replied, "He wanted to open up a mine and get
out bituminous rock." And he tersely answered the fourth
question with the single word, "lease." It will readily be
seen that the answers to the first three questions were neither
responsive nor injurious to defendant. No motion was made
to strike them out on the ground of their irresponsive qual-
ity. In answer to the last question the witness did pertinently
reply, "lease," and, as we have heretofore intimated, this was
proper testimony in explanation of the ambiguous instru-
ment. As was written by Mr. Justice Van Fleet in *Balfour*
v. *Fresno C. & I. Co.,* 109 Cal. 225, [41 Pac. 877]: "This is
not allowing parol evidence for the purpose of altering the
contract or of putting a different sense and construction
upon its language from that which it would naturally bear,
but for the purpose of showing the circumstances under
which the language was used and applying it according to
the intention of the parties." Objection is also made to the
evidence showing that oil was not discovered in the vicinity
of the land until after the execution of the instrument. Such
evidence was clearly in response to paragraphs 7 and 8 of
the complaint, in which it is averred that on April 12, 1890,
when the agreement was signed, the only known minerals were
on the surface, and that by reason of the subsequent dis-
covery of oil in the neighborhood, plaintiffs' land became
more valuable. While, perhaps, these allegations were not
essential to the pleading and might have been omitted, they
were not attacked by special demurrer. These two para-

graphs, taken with paragraph 6, in which the failure to pay royalty and the abandonment are set forth, tend to support, when proven, plaintiffs' assertion that the claim of appellants is without equity.

The judgment and the order denying the motion for a new trial are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.