## MARYLAND CASUALTY CO. v. PEPPARD et al.

No. 7171.  Opinion Filed December 7, 1915.

Rehearing Denied May 2, 1916.

(157 Pac. 166 )

1. **GARNISHMENT—Insurance—Employers' Liability Insurance— Liability of Claim to Garnishment—"Loss From Liability."** The assured entered into a contract with an employers' casualty insurance company by the terms of which the company indemnified the assured "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any employee of the assured," etc. Thereafter, upon action being brought by the personal representative of an employee of the assured, who died as the result of bodily injuries, the insurance company took sole charge of the defense, to the exclusion of the assured, as it had a right to do under the policy. **Held,** that the policy is one to indemnify the assured against liability. **Held,** further, that the final judgment in favor of the plaintiff in the action against the assured became, as between plaintiff, defendant, and the company, a liability or debt owing by the company to the assured, which such plaintiff might reach by garnishment.

2. **INSURANCE—Employers' Liability Insurance—Extent of Liability.** Agreed statement of facts and record examined, and **held:** That they do not disclose whether the person injured was a

Maryland Casualty Co. v. Peppard et al.

"direct employee" of the assured within the meaning of that term as used in another casualty insurance policy wherein the company agrees to indemnify the assured against liability on account of bodily injuries accidentally suffered by any person other than direct employees of the assured, and which further provides that: "This policy does not cover any accident to, or caused by, any direct employee of the assured."

3.    **SAME.** Such policy further provided: "The company's liability for loss from an accident resulting in bodily injuries, including death resulting therefrom, to one person is limited to five thousand dollars ($5,000.00), and, subject to the same limit for each person, the company's total liability for loss from an accident resulting in bodily injuries, including death resulting therefrom, to more than one person is limited to ten thousand dollars ($10,000.00). In addition to these limits, the company will, at its own cost (court costs and all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the limits of the company's liability as hereinbefore expressed being considered part thereof), investigate all accidents and defend all suits, even if groundless, of which notices are given to it as hereinafter required, unless the company shall elect to settle the claim or suit."

**Held,** that the $5,000 limitation does not include interest and the costs and expenses of the original action prosecuted or defended by the company pursuant to the terms of the policy, and that upon recovery of a larger sum by the plaintiff therein the company, in addition to such limit, is liable for such court costs and all interest accruing upon such part of said judgment as is not in excess of said $5,000 limitation.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Edward Dewes Oldfield, Judge.*

Action by Onno Peppard against the Oklahoma City Construction Company and another, as defendants, and the Maryland Casualty Company, as garnishee. Judgment for plaintiff, and the garnishee brings error. Modified. and cause remanded, with instructions.

*Jas. S. Ross* and *L. D. Threlkeld,* for plaintiff in error.

*Harris, Nowlin & Singleton,* for defendant in error Peppard.

KANE, C. J.  This was a garnishment proceeding which arose out of the case of *Oklahoma City Construction Company et al. v. Onno Peppard,* 43 Okla. 121, 140 Pac. 1084.  After the judgment in that case in favor of the defendant in error Onno Peppard had been affirmed, the plaintiff, being unable to collect the same from the judgment debtors, filed an affidavit for garnishment to the effect that the Maryland Casualty Company, a corporation, had property of the defendants, Oklahoma City Construction Company and W. B. Skirvin, and was indebted to defendants, Oklahoma City Construction Company and W. B. Skirvin, and each of them, etc.  The answer of the garnishee was to the effect that it had been and was then in no manner and upon no account indebted or under liability to the defendant Oklahoma City Construction Company, a corporation, or the defendant W. B. Skirvin, and that it had had and then had in its possession or under its control no real estate and no personal property, effects, or credits of any description belonging to either of said defendants or in which either of them had had or had then any interest, and was in no manner liable as garnishee in this action.

Thereafter, issue having been taken with the answer of the garnishee, the cause was heard by the court, which resulted in the issues being found in favor of the plaintiff and against said garnishee, the court finding that:

"The said garnishee, the Maryland Casualty Company of Baltimore, a corporation, has in its possession and under its control money, property, and effects belonging to and is indebted to the said defendant W. B. Skirvin and the said defendant the Oklahoma City Construction Company, a corporation, the total sum of $12,249.15"

—and thereupon the court ordered the garnishee to pay said sum to the plaintiff to the satisfaction of the judgment against said defendants.

To reverse this action of the trial court this proceeding in error was commenced. Hereafter the parties will be designated as "plaintiff" and "defendant" respectively, as they appeared in the court below, the latter denoting the garnishee.

From the agreed statement of facts upon which this cause was tried and the opinion in *Oklahoma Construction Company et al. v. Peppard, supra,* which is made a part thereof, it appears that the defendant, who was engaged in the business of casualty insurance in the State of Oklahoma, and the Oklahoma City Construction Company and W. B. Skirvin entered into three separate contracts of casualty insurance, and that out of these contracts arises the liability, if any, of the defendant. It is contended on the part of the defendant: (1) That the company is not liable as garnishee upon any of the insurance contracts, for the reason that by the terms of each of them it obligated itself to indemnify W. B. Skirvin and Oklahoma City Construction Company against loss imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any employee of the assured while engaged in the occupation and at the place mentioned in the contract, and, as the assured did not satisfy the judgment rendered against them, they suffered no loss, and hence the defendant incurred no liability upon any of its contracts; (2) that, if this proposition is decided adversely to it, then the defendant is only liable on one of its policies, to wit, policy C-19365, known as "contractor's employers' policy"; (3)

if the defendant is held to be liable upon more than one of its policies, then the judgment of the trial court is excessive in the sum of $2,249.15, it being that sum in excess of the amount due the assured according to the terms of the policy. As the plaintiff contends that the defendant is liable on only two of its policies, to wit, No. H-2574, called the "contractor's contingent policy," and policy No. C-19365, called "contractor's employers' policy," we will confine our investigation to these two policies.

These contracts are the ordinary policies issued by this company, and are similar in their terms to many casualty insurance policies which have been under consideration by the courts, except that they do not contain what is generally designated by the courts the "no action" clause. Without setting out the contracts in full, the material provisions necessary to present the questions raised herein may be stated as follows:  (a) The company agrees to indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries, including death resulting therefrom, accidentally suffered by any employee of the assured while engaged in the occupation and at the places mentioned in the contract; (b) the company's liability for loss from an accident resulting in bodily injuries, including death resulting therefrom, to one person is limited to $5,000, and, subject to the same limit for each person, the company's total liability for loss from an accident resulting in bodily injuries, including death resulting therefrom, to more than one person is limited to $10,000; (c) in addition to these limits, the company will, at its own cost (court costs and all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the limits of the company's liability as hereinbefore expressed being con-

sidered part thereof), investigate all accidents and defend all suits, even if groundless, of which notices are given to it as hereinafter required, unless, the company shall elect to settle the claim or suit; (d) immediate notice in writing of any accident and of any suit resulting therefrom, with every summons or other process, must be forwarded to the home office of the company, or to its authorized representative; (e) the company is not responsible for any settlements made or any expenses incurred by the assured, unless such settlements or expenditures are first specifically authorized in writing by the company, except that the assured may provide at the time of the accident, at the expense of the company, such immediate surgical relief as is imperative.

In support of their first contention counsel for defendant say in their brief:

"In this case it will be noted that Skirvin and the construction company are both insolvent and have not paid out or lost anything by reason of the judgment in favor of plaintiff against them, and, if they, as the insured, have no right of action against the defendant for the reason that this judgment has not been' paid, then naturally we must conclude that plaintiff's present action must fail."

As supporting this contention they cite the following cases: *Carter v. Ætna Life Ins. Co.*, 76 Kan. 275, 91 Pac. 178, 11 L. R. A. (N. S.) 1155; *Breeden v. Frankfort Marine, Accident & Plate Glass Ins. Co.*, 110 Mo. App. 312, 85 S. W. 930; *Ford v. Ætna Life Ins. Co.*, 70 Wash. 29, 126 Pac. 69; *Cousins v. Paxton & Gallagher Co.*, 122 Iowa, 465, 98 N. W. 277; *Frye v. Bath Gas & El. Co. et al.*, 97 Me. 241, 54 Atl. 395, 59 L. R. A. 444, 94 Am. St. Rep. 500; *Finley v. U. S. Casualty Co.*, 113 Tenn. 592, 83 S. W. 2, 3 Ann. Cas. 962; *Poe v. Philadelphia Casualty*

Co., 118 Md. 347, 84 Atl. 476; *Allen v. Gilman et al.* (C. C.) 137 Fed. 136; *Burke v. London Guar. & Accident Co.,* 47 Misc. Rep. 171, 93 N. Y. Supp. 652.

The policies involved in all of these cases contained the "no action" clause heretofore referred to, which reads:

"No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after a trial of the issue."

If the policies involved herein contained this "no action" clause, we have no doubt that the contention of counsel for defendant would be supported by a preponderance of the authorities. The other side of the proposition, however, even where the policies contain the " no action" clause, is not without respectable support. *Sanders v. Frankfort Marine, Accident & Plate Glass Ins. Co.,* 72 N. H. 485, 57 Atl. 655, 101 Am. St. Rep. 688; *Patterson v. Adan et al.,* 119 Minn. 308, 138 N. W. 281, 48 L. R. A. (N. S.) 184.

So we find that, whilst there is considerable conflict in the authorities as to the proper construction to be placed upon policies containing the "no action" clause, the construction of policies in all other respects similar, but not containing the "no action" clause, has not been, in so far as we have been informed, often under consideration by the courts.

From an examination of the opinions in the cases sustaining what may be called the majority rule we are unable to say to what extent the courts rendering them were influenced by the "no action" clause in reaching their conclusions. However, if any of these cases hold that

the phrase "indemnify against loss from the liability imposed by law upon the assured for damages on account of bodily injuries," standing alone, literally means "indemnity against loss from the liability imposed by law upon the assured for damages on account of bodily injuries which have been actually paid or extinguished by the assured," we cannot agree with them. "Loss from liability" literally means loss which arises immediately upon one becoming liable to another, not loss which arises immediately upon such liability being paid or extinguished. "Liability" is defined in Webster's New International Dictionary as "that which one is under obligation to pay, or for which one is liable." In our judgment, it is faulty reasoning which leads to the conclusion that one can suffer no loss if he is unable to pay that which he is under obligation to pay. Many modern business men, we dare say, would deem the loss of money insignificant compared to the loss of good name, not to mention other losses which inevitably follow inability to meet honest obligations. However, as upon this literal interpretation the actual amount of recovery might become somewhat obscure, and such contracts, as thus construed, are practically unknown to the casualty insurance business, it would be more reasonable to assume that the parties intended the contracts should belong to one of the two well-known classes into which such contracts have been generally divided by the companies extensively engaged in the casualty insurance business, to wit, "policies to indemnify against loss" and "policies to indemnify against liability." It may be well to state here that the difference between the two classes of contracts is that upon the former an action cannot be brought and a recovery had until the liability is dis-

charged, while upon the latter the cause of action is complete when the liability attaches.

It seems quite clear to us that, while the clause of the policies under discussion herein contains some of the elements of both classes, it does not precisely fit either. The rule is that, when the evidence of the agreement furnished by the contract itself is not plain and unmistakable, but is open to more than one interpretation, the reasonableness of one meaning as compared with the other, and the probability that men in the circumstances of the parties would enter into one agreement or the other, are competent for consideration on the question as to what the agreement was which the written contract establishes. *Kendall v. Green*, 67 N. H. 557, 42 Atl. 178. In view of all the circumstances surrounding transactions of this kind, we are of the opinion that it is more in harmony with right, justice, and reason, and the rules governing the construction of contracts of insurance, which are always prepared by the insurer, to hold that the policies before us indemnify the assured against liability. In *Insurance Co. v. Fordyce*, 62 Ark. 562, 36 S. W. 1051, 54 Am. St. Rep. 305, the court, construing a similar policy, said: "This is plainly a contract to pay liabilities." To the same effect are *Insurance Co. v. Fordyce, supra; Lewinthan v. Insurance Co.*, 61 Misc. Rep. 621, 113 N. Y. Supp. 1031; *Clark v. Bonsal*, 157 N. C. 270, 72 S. E. 954, 48 L. R. A. (N. S.) 191. In all of these authorities, as well as in *Anoka Lumber Co. v. Company*, 63 Minn. 286, 65 N. W. 353, 30 L. R. A. 689; *Sanders v. Insurance Co., supra; Hoven v. Insurance Co.*, 93 Wis. 201, 67 N. W. 46, 32 L. R. A. 388, and *Fenton v. Insurance Co.*, 36 Ore. 283, 56 Pac. 1096, 48 L. R. A. 770, 78 Am. St. Rep. 792, provisions similar to those hereinbefore set out, marked

"c," "d," and "e," reserving the right in the insurer to settle and defend actions against the assured, etc., are considered as furnishing evidence that the contract was one of indemnity against liability.

We are also impressed by this consideration. It seems to us there is cogency in the reasoning that by undertaking the defense the company elected to treat the plaintiff's cause of action as covered by its policy, and, when it substituted itself and its judgment for that of the assured, both plaintiff and defendant have a right to insist that the final judgment establishes the liability and debt of the company to the assured.

The second contention of counsel for defendant we think is well taken. Policy C-19365, known as "contractor's employers' policy," indemnifies the assured against loss from liability suffered by any employee of the assured. The agreed statement of facts and the case of *Oklahoma Construction Company et al. v. Onno Peppard, supra,* clearly demonstrates that Raymond Peppard, the injured person, was an employee of the assured; therefore the assured would be entitled to recover under that policy. But policy No. H-2574, known as "contractor's contingent policy," by its terms indemnifies the assured against loss from liability suffered by any person or persons other than "direct employees" of the assured, and further provides that: "This policy does not cover any accident to, or caused by, any direct employee of the assured." The point is made by counsel for plaintiff that, whilst Raymond Peppard, the injured person, was an employee of the assured, he was not a "direct" employee of the assured, because Mr. Skirvin did not directly employ him; he was employed directly by another person, a subcontractor who had a contract for the brick work upon the Skirvin Hotel

building; therefore, they say, the injured person not being a "direct employee" of the assured, the defendant is also liable upon the policy No. H-2574. The agreed statement of facts does not specifically state whether the injured person was an "employee" or a "direct employee" of the assured, but counsel call our attention to the following evidence which was offered at the trial which they say supports their contention:

"Q. Mr. Skirvin, did you ever directly employ Raymond Peppard to do any work on the Skirvin Hotel building? A. No. Q. Did you ever have any employees engaged in the work of erecting the Skirvin Hotel building whatsoever; any person whom you employed yourself except the Oklahoma City Construction Company? A. No. Q. Did you have anything to do with the hiring or discharging of workmen or employees engaged in the construction or erection of that building? A. No. Q. Who did the employing of the workmen or laborers engaged in the erecting of the hotel? A. The Oklahoma City Construction Company, through Mr. Ridpath, part of the time as manager, and D. J. Shenk, part of the time as manager. Q. Who, if you know, was putting up or doing the brickwork in the construction of this hotel? A. John St. Clair. Q. Who employed the laborers or masons engaged in putting up the brickwork? A. The brickwork was let to John St. Clair as a contract by itself. He did the work for them at a stipulated price, and he employed his own men in the construction work. Q. Who employed John St. Clair? A. The Oklahoma City Construction Company. Q. Who, if you know, paid the laborers for their work on the building? A. The Oklahoma City Construction Company. Q. Were any of the employees of the Oklahoma City Construction Company employed by you or paid by you? A. No."

Assuming, without deciding, that this evidence tends to show that the injured person was not a "direct em-

ployee" of the assured, it also tends to show that the accident was caused by a direct employee of the assured, and therefore the defendant would be absolved from liability by the clause in the policy which provides:

"This policy does not cover any accident to or caused by any direct employee of the assured," etc.

The relation of the assured as between themselves was that of principal and agent, and the relation of the deceased and the assured was that of master and servant. *Oklahoma City Construction Co. et al. v. Onno Peppard, supra.* Neither the agreed statement of facts nor the opinion in the case last above cited discloses precisely how the accident happened or the precise person who was directly at fault. There is room, however, for a fair inference that it was the negligence of the construction company which caused the accident. If this is true, then the accident was caused by a "direct employee" of one of the assured parties, to wit, W. B. Skirvin. If we assume that the injury was caused by Mr. St. Clair, who had the contract for the brickwork, the plaintiff is in no better situation, for he also was a "direct employee" of one of the assured, to wit, the construction company; so, even assuming that counsel are right in their interpretation of the clause of the contract under consideration, we are unable to find sufficient facts in the record to support the conclusion they reach.

The last contention of the plaintiff in error is that the court erred in the assessment of the amount of recovery, in that he added the sum of $73.15 court costs in the original case of Onno Peppard against Skirvin and others in the district court, and the sum of $2,176, which was 6 per cent. upon $10,000, from the date of rendition of the judg-

ment to date of the trial of the present case. We think the basis for recovery adopted by the trial court was correct; but, as we hold that the plaintiff is only entitled to recover on one policy, it will be necessary to modify the judgment accordingly. The policy upon which recovery is granted provides that:

"The company's liability for loss from an accident resulting in bodily injuries, including death resulting therefrom, to one person is limited to five thousand dollars ($5,000.00), and, subject to the same limit for each person, the company's total liability for loss from an accident resulting in bodily injuries, including death resulting therefrom to more than one person is limited to ten thousand dollars ($10,000.00). In addition to these limits, the company will, at its own cost (court costs and all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the limits of the company's liability as hereinbefore expressed being considered part thereof), investigate all accidents and defend all suits, even if groundless, of which notices are given to it as hereinafter required, unless the company shall elect to settle the claim or suit."

In our judgment, by the very terms of its contract, the company, in addition to the sums specifically limited, obligates itself to pay all court costs and all interest accruing after entry of judgment upon such part thereof as shall not be in excess of the limit of the company's specified liability.

For the reasons stated, the judgment of the court below must be modified, and the cause remanded, with instructions to enter judgment as herein indicated.

All the Justices concur.