'(August 10, 1923.)

ALICE M. HAUTER et al., Appellants, v. COEUR D'ALENE ANTIMONY MINING COMPANY, a Corporation, and AETNA LIFE INSURANCE COMPANY, a Corporation, Respondents.

[228 Pac. 259.]

WORKMEN'S COMPENSATION ACT—EMPLOYER'S INSURANCE—HOW CANCELED—WHEN IN FORCE—WHEN EMPLOYEE EXCLUDED FROM TERMS OF ACT—NOTICE TO INSURED IS NOTICE TO INSURER.

1. An insurance policy insuring an employer under the Workmen's Compensation Act which contains a recital that such policy covers the entire liability of the insured for compensation to its employees can only be canceled by the insurance company strictly complying with the conditions of the policy relating to the manner of canceling the same.

2. Where a hearing was had before the Industrial Accident Board, and it made findings, conclusions and an award based thereon, and also found that the employer did not have its employees insured, where the undisputed facts show that a policy had been issued to the employer to cover its liability to its employees, that such policy had not been canceled in accordance with the terms of the policy, the question as to whether the employer has insurance is one of law, and a contrary finding of the

Publisher's Note.
2. Right and extent of review of findings of Industrial Accident Commission, see notes in Ann. Cas. 1916B, 475; Ann. Cas. 1918B, 647; L. R. A. 1916A, 178, 266; L. R. A. 1917D, 186.

board is ineffectual to relieve the insurance company from liability to employees of such company who have been injured in the course of such service.

3. The provision in C. S., sec. 6321, of the Workmen's Compensation Act, which excludes from the benefits of the act persons whose remuneration exceeds $2,400 a year, does not apply to an employee who, at the time of the injury, is not employed under a definite, certain contract for a full year or more, at a determined or determinable wage amounting to more than $2,400.

4. A claim made against an insurance company is not barred under either C. S., sec. 6243 or 6612, because the insurance company was not made a party to the original proceedings before the Industrial Accident Board against the employer, since by C. S., secs. 6282 and 6283, every policy of insurance issued under this act must contain a condition that notice to the assured shall be deemed notice to the insurance company.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. Albert H. Featherstone, Judge.

Action on an insurance policy under Workmen's Compensation Act. From judgment of nonsuit, plaintiff appeals. *Reversed.*

James F. Ailshie, James F. Ailshie, Jr., and Carlton Fox, for Appellant.

Insurance policies will be strictly construed against the insurer and liberally construed in favor of the insured. (*Sweaney & Smith Co. v. St. Paul Fire Ins. Co.,* 35 Ida. 303, 206 Pac. 178; *Taylor v. Insurance Co. of North America,* 25 Okl. 92, 138 Am. St. 906, 105 Pac. 354; *Grant Lumber Co. v. North River Ins. Co.,* 253 Fed. 83; *Commercial Union Fire Ins. Co. v. King,* 108 Ark. 130, 156 S. W. 445; *Rawl v. American Central Ins. Co.,* 94 S. C. 299, Ann. Cas. 1913A, 1231, 77 S. E. 1013; *American Fire Ins. Co. v. Brooks,* 83 Md. 22, 34 Atl. 373; *Bradshaw Brothers & Co. v. Fire Ins. Co.,* 89 Minn. 334, 94 N. W. 866.)

A clause in an insurance policy which is either uncertain, ambiguous or susceptible of more than one construction will be given a construction most favorable to the insured.

(*Sweaney & Smith Co. v. St. Paul Fire Ins. Co., supra; German Union Fire & Ins. Co. v. Fred G. Clarke Co.,* 116 Md. 622, Ann. Cas. 1913D, 488, 82 Atl. 974.)

Courts will seize hold of and give effect to slight circumstances in order to prevent the forfeiture or cancelation of an industrial accident policy given under a workmen's compensation law in order to protect the innocent workmen and beneficiaries who had no chance to protect themselves. (*Public Sav. Ins. Co. v. Manning,* 61 Ind. App. 239, 111 N. E. 945.)

The question is whether the policy issued by respondent was still in force on the date of Hauter's injury or had been previously canceled in accordance with the terms of the contract. It was clearly a liability contract. (*Fenton v. Poston,* 114 Wash. 217, 195 Pac. 31; *Maryland Casualty Co. v. Peppard,* 53 Okl. 515, 157 Pac. 106, L. R. A. 1916E, 597.)


James A. Wayne, for Respondent.

The policy of insurance issued by respondent had been canceled before the accident to Hauter. The fixing of a shorter time limit in the notice of cancelation than that required by the policy did not render the cancelation notice void, but said cancelation became effective upon the expiration of the time fixed by the policy—in this case, thirty days from August 10, 1918. (*Commercial Union F. Ins. Co. v. King,* 108 Ark. 130, 156 S. W. 445; *Ralston v. Royal Ins. Co.,* 79 Wash. 557, 140 Pac. 552; *Davidson v. German Ins. Co.,* 74 N. J. L. 487, 12 Ann. Cas. 1265, 65 Atl. 996, 13 L. R. A., N. S., 884; *American Glove Co. v. Pennsylvania Fire Ins Co.,* 15 Cal. App. 77, 113 Pac. 688; *Schwarschild & Sulzberger Co. v. Phoenix Ins. Co.,* 124 Fed. 52, 59 C. C. A. 572.)

The finding of the Industrial Accident Board that this policy had been canceled, and that the defendant mining company did not have its employees insured at the time of the Hauter accident, no appeal having been taken therefrom, is a final and conclusive adjudication of the fact that

said policy was canceled.    (*Skoczlois v. Vinocour*, 221 N. Y. 276, 16 N. E. 1004.)

WILLIAM A. LEE, J.—This action grows out of proceedings originally instituted by the appellant Alice M. Hauter on behalf of herself and her minor son Granville Hauter, before the Industrial Accident Board of the state of Idaho, against the Coeur d'Alene Antimony Mining Company, a corporation engaged in operating its property near Kellogg, Idaho, to recover compensation on account of the death of her husband, who died as the result of an injury received by him while an employee of that company on the 17th day of November, 1918. The Industrial Accident Board on October 6, 1920, made certain findings of fact and rulings of law thereon, and ordered, adjudged and decreed that the claimant Alice M. Hauter receive from said Coeur d'Alene Antimony Mining Company the sum of $12 per week for a period of 400 weeks, unless she should die or remarry prior to the expiration of such time, together with $100 for funeral expenses of her deceased husband, and that said minor son, Granville Hauter, receive $10.80 per week for a period of four years, two months and fourteen days, the total award being $7,261.60. This award having been certified to the district court in and for Shoshone county, Idaho, in accordance with C. S., sec. 6271, a judgment was made and entered thereon by said court March 25, 1921, affirming said award against said company in the sum of $7,261.60.

June 30, 1921, Alice M. Hauter was appointed guardian *ad litem* for the infant Granville Hauter, and on the same day she petitioned the court for a writ of execution supplementary to judgment, alleging that respondent Aetna Life Insurance Company was a Connecticut corporation, organized for the purpose of selling life, accident and liability insurance, surety bonds covering the liability of employers under said compensation act, and various other forms of insurance and indemnity bonds, and that respondent in this capacity was carrying on a general

insurance business in this state; that Alice M. Hauter is the surviving widow of Arthur F. Hauter, deceased; that she was wholly dependent upon him for support at the time of his death, as was also the minor son, Granville Hauter; that she had been appointed his guardian *ad litem*, and had qualified and was acting as such; that about January 1, 1918, respondent Aetna Life Insurance Company entered into a contract of insurance with the other respondent Coeur d'Alene Antimony Mining Company, made exhibit "A" of the petition; that it was in full force and effect in November, 1918, at the time of the injury and death of Arthur F. Hauter, who was at the time of the injury which resulted in his death working for the Coeur d'Alene Antimony Mining Company in its mining operations at Pine Creek, Shoshone County, Idaho; and that while in such employment, and in the course of the same, he was fatally injured.

It is further alleged that on March 24, 1921, the district court in and for the county of Shoshone duly gave and entered its judgment in favor of petitioner and against the mining company for the sum of $7,261.60, as compensation to petitioner for the death of Arthur F. Hauter, the same to be paid to appellant Alice M. Hauter at the rate of $12 per week and to the minor son at the rate of $10.80 per week; that respondent Aetna Life Insurance Company, pursuant to its contract with respondent mining company, promised and agreed to pay this judgment as the same became due and payable, and all liability arising therefrom or thereunder, and that by reason thereof respondent life insurance company was and is liable to appellant for the sum now due and to become due upon said judgment, under and pursuant to the laws of the state of Idaho; that it is a proper and necessary party to this action; that appellant Alice M. Hauter has not remarried since the death of her husband, and that neither the whole nor any part of said judgment has been paid; that the amount is due and payable according to the terms of the award to herself and minor child. Appellant prays that an order issue directing

said Aetna Life Insurance Company to appear and show cause why execution should not be issued against it for the payment of said award.

The court issued a citation to the insurance company, directing that it be made a party to said action for all purposes, the same as if it had been made an original party to the proceedings before the Industrial Accident Board. It appeared and demurred to the petition on the grounds: (1) That it did not state facts sufficient to constitute a cause of action or to show a right of recovery against it for the relief prayed for, or any relief whatever; (2) that the court was without jurisdiction of the subject of the action; (3) that the cause of action attempted to be set forth in the petition was barred by the provisions of C. S., secs. 6612 and 6243. The demurrer being overruled, it answered, not waiving its demurrer or objections to the jurisdiction of the court or the sufficiency of the petition; admitted the execution of the contract of insurance pleaded in the petition, but alleged that it canceled the same prior to the happening of the accident that caused the death of Arthur F. Hauter; and alleged that it was not a party to the proceedings brought before the Industrial Accident Board and had not had an opportunity to be heard at said hearing, and is not bound by the decisions, findings or ruling of said board. It alleged that the judgment or award made by said board was obtained by collusion between appellant Alice M. Hauter and her attorneys and the other respondent, the Coeur d'Alene Antimony Mining Company; that at the time of the death of Arthur F. Hauter he was not within the provisions of the Workmen's Compensation Act, because he was receiving compensation or wages amounting to more than $2,400 per year; that the Coeur d'Alene Antimony Mining Company, at the time such award was made, pretended to be insolvent, so that such award could not be collected from it. For an affirmative defense, it pleaded that on January 1, 1918, said Coeur d'Alene Antimony Mining Company elected to and did file with the insurance manager of the state of Idaho, as required by law, a surety

bond executed by the Aetna Casualty & Surety Company, and on January 1, 1918, secured from said Aetna Casualty & Surety Company and filed with said Industrial Accident Board a certain agreement, which was made a part of the answer; that on August 8, 1918, it served upon said mining company a notice that said Workmen's Compensation Policy No. C–0319469 and Bond No. S–98733 be canceled, such cancelation to be effective August 20, 1918, on account of nonpayment of premium due; and that the same were canceled.

It is further alleged that as the said petitioner was at that time within the jurisdiction of the Industrial Accident Board, and did not at any time file a separate claim against this respondent, and did not and has not made it a party to the original claim for compensation for the alleged injury or death, petitioner has forfeited any right against this respondent, and it prays to be dismissed from the proceedings.

Upon issues thus joined, a hearing was had before the court, and at the close thereof respondent insurance company moved for a nonsuit and a dismissal of the action against it on the grounds: (1) That the evidence is insufficient to show that at the time of the accident and death of Hauter he was within the provisions of the Idaho Workmen's Compensation Act, but affirmatively shows that he was not, because he was earning more than $2,400 a year; (3) that the cause of action is barred by the provisions of C. S., secs. 6612 and 6243. This motion for nonsuit was granted, on the grounds and for the reason that the evidence is insufficient to support any judgment in favor of the appellant petitioner against the respondent Aetna Life Insurance Company, and that the evidence affirmatively shows that petitioner has no cause of action against the said life insurance company, for the reasons more particularly set forth in the motion for nonsuit. From this decision of the district court, this appeal is taken.

The nonsuit was allowed upon the grounds that the evidence was insufficient to support any judgment in favor

of appellant and against the insurance company, and that such evidence affirmatively shows that appellant has no cause of action against said company, for the reasons specified in the motion. We conclude that the controlling questions in this case are: (1) Was this policy in effect at the time of the accident that resulted in the death of the deceased Hauter? (2) Was he at that time within the provisions of the Workmen's Compensation Act? (3) If the policy was not canceled and the deceased Hauter was within the provisions of the act, are the rights of appellant barred by either C. S., sec. 6243 or 6612?

Appellant erroneously argues that because respondent insurance company endeavored to collect the premium earned to the date of the attempted cancelation after such time, this was in effect a waiver of the notice of cancelation. There is no merit in this contention. An insurance company is entitled to collect all premiums earned to the time of its election to cancel the policy. (*Skoczlois v. Vinocour,* 221 N. Y. 276, 116 N. E. 1004.)

Respondent claims that because it was not made a party to any of the proceedings before the Industrial Accident Board, and the claimant never having asserted any right of action against it in any of the proceedings before the board, even if the policy had not been canceled, it is too late for claimant to enforce the award against it, and the trial court appears to have taken this view in granting the nonsuit. An order sustaining a motion for nonsuit admits the truth of the adversary's evidence and every inference of fact that may be legitimately drawn therefrom. (*Marshall v. Gilster,* 34 Ida. 420, 201 Pac. 711; *Pocatello Security Trust Co. v. Henry,* 35 Ida. 321, 27 A. L. R. 337, 206 Pac. 175.) The contract of insurance, as required by C. S., secs. 6282 and 6283, contains an indorsement made after the same was written, which in part reads as follows:

"The policy covers the entire liability of the assured for compensation to his employees covered by the policy. Such employees shall have the right to enforce in their own names either by at any time filing a separate claim

or by at any time making the company a party to the original claim, the liability of the company in whole or in part for the payment of such compensation. . . . .

"The jurisdiction of the assured shall, for the purposes of the Workmen's Compensation Act, be jurisdiction of the company, and the company shall in all things be bound by and subject to the orders, findings, decisions or awards rendered against the assured for the payment of compensation under the provisions of said Act."

The respondent insurance company was not a party to any of the proceedings had before the Industrial Accident Board, and was first brought into this suit by this petition for a writ of execution supplementary to judgment on June 30, 1920. As stated, the court overruled respondent insurance company's general and special demurrer, and it answered over and set up by way of defense the facts alleged in its answer, which we have already outlined. The cause was heard and determined by the court below upon the issues of law and fact tendered by this petition for a writ of execution and respondent's answer thereto. No cross-appeal having been taken to the order overruling the general demurrer or otherwise challenging the jurisdiction of the court to hear and determine these questions, the cause appears to have been tried upon the theory that the court had jurisdiction to hear and determine the issues presented by these pleadings, by reason of the provisions contained in the indorsement on the policy above quoted.

Upon this state of the record, the questions presented for determination are, first, as to whether or not the insurance policy, No. C–0319469, was in fact canceled; secondly, if not canceled, was the deceased at the time of the injury within the provisions of the Workmen's Compensation Act; and third, if both of these should be answered affirmatively, was the cause of action set up in said petition barred by the provisions of C. S., secs. 6612 and 6243.

Considering the question of whether this policy had been canceled: The record discloses that the insurance company

sent to the assured mining company a notice reading as follows:

"August 8th, 1918.
"Coeur d'Alene Antimony Mining Company,
   "Kellogg, Idaho.
"Gentlemen:

"The Aetna Life Insurance Company and The Aetna Casualty and Surety Company, notify you that they hereby cancel their Workmen's Compensation Policy No. C–0319469 and Bond No. S–98733, said cancelation to be effective August 20th, 1918, in accordance with its conditions, on account of nonpayment of premium due, after which date the policy and bond becomes null and void without further notice.

"Very truly yours,
   "ROSSI INSURANCE AND INVESTMENT
      COMPANY,
         "By ————————————,
               "General Agents."

The policy itself contains the following conditions:

"10. The policy shall become effective on the first day of January, 1918, at 12:01 A. M., and shall continue in force until canceled in accordance with the provisions of paragraph H of the General Agreements."

"H. This policy shall be canceled at any time by either of the parties hereto by giving not less than thirty (30) days written notice to the other party of such cancelation, which shall be effective at noon on the day specified for cancelation in said notice, etc."

We think that the attempt to cancel the policy, not having been made in accordance with the conditions and requirements specified in the instrument itself, was ineffectual, and such policy was in force at the time of the happening of the injury complained of. The notice of cancelation clearly does not comply with the requirements of the contract itself, for the notice provides that the cancelation of both the bond and the policy of insurance shall be effective August 20, 1918, although the condition in the policy required

that either party attempting to cancel the same should give not less than thirty days' written notice to the other party, and that the same should be effective at noon on the date specified for cancelation in such notice. Under the tenth subdivision, it is provided that the policy shall remain in force until it is canceled in accordance with the terms of said paragraph H. Respondent concedes that the notice was not sufficient to cancel the policy on the date fixed in the notice, but contends that such cancelation would become effective after the expiration of thirty days from the service of the notice, and cites authorities involving fire insurance policies containing somewhat similar provisions, wherein it is held that although the time given in the notice was not that specified in the policy, still the notice would be held sufficient after the expiration of the time fixed by that instrument. No case is called to our attention involving the cancelation of a policy of this kind given under the provisions of the Workmen's Compensation Act. In view of the fact that such contracts are issued not only for the benefit of the assured, but for the benefit of its employees, who necessarily have no control over the contract, we are of the opinion that such contracts should be canceled only by a strict compliance with the conditions of the contract itself. (*Sweaney & Smith Co. v. St. Paul Fire Ins. Co.,* 35 Ida. 303, 206 Pac. 178; *McDonald v. North River Ins. Co.,* 36 Ida. 638, 213 Pac. 349; *Public Savings Ins. Co. v. Manning,* 61 Ind. App. 239, 111 N. E. 945; *Taylor v. Insurance Co. of North America,* 25 Okl. 92, 138 Am. St. 906, 105 Pac. 354; *American Fire Ins. Co. v. Brooks,* 83 Md. 22, 34 Atl. 373; *Bradshaw Bros. & Co. v. Fire Ins. Co.,* 89 Minn. 334, 94 N. W. 866.)

With reference to appellant being bound by paragraph 2, page 6 of her exhibit "A," which is a finding of the Industrial Accident Board as follows: "2. That on the 17th day of November, 1918, the Coeur d'Alene Antimony Mining Company, Limited, did not have its employees insured in accordance with the provisions of the Workmen's Compensation Act of the state of Idaho," it is sufficient to say that

since all of the facts upon which either party may rely to support their respective contentions with reference to the validity of this attempted cancelaton are admitted, the question as to whether such policy was in fact canceled by a compliance with its terms becomes one of law and not of fact. (*Johnston v. A. C. White Lumber Co.*, 37 Ida. 617, 217 Pac. 979.) It would therefore follow that this ruling of the Industrial Accident Board, even if it were upon an issue properly before it, and had reference to the attempted cancelation of this policy, being upon question of law, that is to say, upon the construction of a written contract, it is subject to review by the court, and we hold that this policy had not been canceled.

The contention of respondent that the evidence fails to show that at the time of the accident and death of Hauter he was within the provisions of the Workmen's Compensation Act, but, on the contrary, affirmatively shows that he was not, because he was earning more than $2,400 per year, is equally untenable. It is conceded that the deceased had worked for this company only a short time prior to receiving the injury from which he died, thirteen days in all, he having commenced work on the 4th of November. It is true that he had applied for a position as superintendent of the company, and by a telephone conversation with the president of the company was instructed to go to the mine and begin work, but without any agreement as to how long he would be employed nor as to the rate of compensation. The secretary of the mining company does testify that they paid the superintendent an annual salary in excess of $2,400, but the deceased had not been employed as superintendent, nor had any specific rate of compensation been agreed upon. As said in *Kelley's Dependents v. Hoosac Lumber Co.*, 95 Vt. 50, 113 Atl. 818:

"Employees excluded from the Workmen's Compensation Act under G. L. 5758, providing that the act does not apply to a workman whose remuneration exceeds $2,000 per year, in the absence of an agreement specified therein, are those working under a contract, a definite term of which is one

full year or more, at a determined or determinable wage amounting to more than $2,000, and all other employees, regardless of the total amount earned, are within the act."

Considering respondent's third ground upon which it based its motion for nonsuit, that the cause of action is barred by the provisions of C. S., secs. 6243 and 6612: The first one relied upon is a part of article 4 of the Workmen's Compensation Act, entitled "Preliminary Procedure in Obtaining Compensation," and provides that no proceedings under this chapter for compensation shall be maintained unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof, etc. In view of the very comprehensive language contained in the indorsement on the policy, wherein the respondent insurance company agrees to be in all things bound by and subject to the orders, findings, decisions or awards rendered against the assured for the payment of compensation, no other notice of the proceedings had before the board was necessary. C. S., sec. 6612, has no application whatever to a case of this kind.

For the reasons herein stated, the cause is reversed and remanded, with instructions to overrule the motion for nonsuit and proceed with the cause in a manner not inconsistent with the views here expressed. It is so ordered. Costs to appellants.

McCarthy, Dunn and Wm. E. Lee, JJ., concur.

(August 15, 1924.)

ON REHEARING.

WILLIAM A. LEE, J.—Respondent Aetna Life Insurance Company petitioned for a rehearing which was granted and the cause was again submitted at the June, 1924, term of this court held at Lewiston.

The principal errors relied upon for a rehearing are (1) that the failure of respondent to appeal from the order overruling the demurrer challenging the jurisdiction of the

court was in effect a waiver of the objection; (2) that the contract of insurance had not been canceled; and (3) that the cause, if reversed, should be remanded for a new trial in order to give respondent an opportunity to offer its evidence in support of its contention that the policy had been canceled, and that such cancelation had been acquiesced in.

We agree with respondent that the question of the jurisdiction of the court over the subject matter is never waived and may be raised for the first time in this court, and there is nothing in the original opinion contrary to the holding in *Aram v. Edwards,* 9 Ida. 333, 74 Pac. 961.

The second contention, that there was error in holding that the insurance policy had not been canceled, we think has been sufficiently considered and for the reasons stated the conclusion reached will be adhered to.

It is urged that irrespective of the fact that this policy was in part for the benefit of those who might be employed by the mining company, it was nevertheless a contract only between respondent and the mining company, and the mining company having breached its contract by a failure to pay the premium, respondent had a right to cancel it and gave a notice that was definite, certain and unequivocal which evinced a determination to do so, and the other party was not misled thereby, although the time fixed was impossible under its terms; but, on the contrary, that the insured acquiesced in its cancelation and such cancelation should be held effective from and after the expiration of the thirty days provided in the policy, which was prior to the injury complained of.

Respondent insists that a more strict compliance with the terms of the agreement relating to cancelation should not be exacted than in other classes of insurance; that even though the policy may be taken out primarily for the benefit of the insured's employees and they may have a vital interest in it, they cannot prevent its cancelation where the insurer elects to cancel the same. But we adhere to the view that the employees of the insured who have suffered injuries, or their dependents when death has ensued, may recover

against the insurer unless the policy has been canceled in accordance with the conditions in the policy. The insurer fixes those terms, and it is a well-settled rule of construction that the words of a contract will be construed most strongly against the party who uses them. (Anson on Contracts, p. 253, Knowlton's 2d Am. ed.; Century Digest, vol. 11, p. 729; *Noonan v. Bradley,* 76 U. S. 394, 19 L. ed. 757; *Otis v. United States,* 20 Ct. of Cl. 315; *Shannon Copper Co. v. Potter,* 13 Ariz. 245, 108 Pac. 486; *Dollar v. International Banking Co.,* 10 Cal. App. 83, 101 Pac. 34; *Payne v. Neuval,* 155 Cal. 46, 99 Pac. 476; *Yoch v. Home Mut. Ins. Co.,* 111 Cal. 503, 44 Pac. 189, 34 L. R. A. 857; *Lassing v. James,* 107 Cal. 348, 40 Pac. 534.)

The preamble to the Workmen's Compensation Act, C. S., sec. 6214, as well as the entire law, manifests a purpose on the part of the legislature, under its police power, to require every industry to bear the burden cast upon the working class because of personal injuries occasioned by accidents that are an incident of the occupation, in so far as the same may be compensated by a pecuniary consideration. All of its provisions, including the procedure to enforce the same, should be considered in view of this purpose and all contracts of indemnity to the injured, or their dependents when death ensues, should be so construed, in so far as a reasonable construction of the agreement will permit. In this view of the law we think the insurer should be required to comply with the terms of its policy with regard to its cancelation. If the question was one solely between the insurer and the insured, the acquiescence of the assured in the attempted cancelation, however irregular, would estop it to deny the same.

The question as to whether this contract of insurance is within the Workmen's Compensation Act and whether the Industrial Accident Board had authority to make the award is suggested by the record. Article 8 of the act prescribes the manner and form of giving security for compensation. C. S., sec. 6278, provides that employers, excluding the state or the municipal bodies mentioned in

sec. 6215, shall secure compensation to their employees in one of the following ways:

"1. By insuring and keeping insured the payment of such compensation in the state insurance fund; or

"2. By depositing and maintaining with the department of commerce and industry security satisfactory to the board securing the payment by said employer of compensation according to the terms of this chapter. Such security may consist of a surety bond or guaranty contract with any company authorized to do surety or guaranty business in Idaho and having a sufficient deposit with the state treasurer upon which execution may lawfully be issued against said company on behalf of any workman secured under said bonds or contracts."

It is evident that the insurance policy pleaded and relied upon by appellant, the provisions of which have been considered, does not meet the requirements of either of the foregoing subdivisions of the section, because the employer was not insured in the state fund, nor is it such a surety bond or guaranty contract as required by the second subdivision, so that unless it falls within the terms of other provisions of this article it would not by its terms be insurance within the meaning of the Workmen's Compensation Act.

The Industrial Accident Board in the first instance had jurisdiction to hear and determine the amount of the award against the mining company, which was accordingly done, and a judgment was entered thereon in the district court for Shoshone county on March 24, 1921, in accordance with C. S., sec. 6271. The defendant mining company not having satisfied the award of the Industrial Accident Board or the judgment rendered thereon in the district court, by way of petition for a writ of execution against respondent supplementary to the judgment, claimants for the first time made respondent a party to the proceeding and as a basis for so doing relied upon the insurance agreement in controversy, designated Plaintiff's Exhibit "E," being policy No. C–0319469. Unless liability against respondent arises

by virtue of this policy, under C. S., secs. 6282 and 6283, there is merit in the contention that as against respondent the court is without jurisdiction.  These sections read:

"Sec. 6282.  Every policy of insurance in the state insurance fund and every guarantee contract or surety bond covering the liability of the employer for compensation, shall cover the entire liability of the employer to his employees covered by the policy, bond or contract, and also shall contain a provision setting forth the right of the employees to enforce in their own names either by at any time filing a separate claim or by at any time making the surety a party to the original claim, the liability of the surety in whole or in part for the payment of such compensation. . . . . "

"Sec. 6283.  Every such policy and contract shall contain a provision that, as between the employee and the surety, the notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge as the case may be on the part of the surety; that the jurisdiction of the employer shall, for the purpose of this chapter, be jurisdiction of the surety, and that the surety shall in all things be bound by and subject to the orders, findings, decisions or awards rendered against the employer for the payment of compensation under the provisions of this chapter."

This contract of insurance was made January 1, 1918, and on February 5th following an indorsement was attached thereto in almost the precise language of these sections above quoted.  It is therefore evident that it was the purpose of respondent by this policy to indemnify the mining company as well as to become liable to its employees for injuries to them.  By this contract respondent stipulated that it "shall in all things be bound by and subject to the orders, findings, decisions or awards rendered against the assured" whether made a party to the proceedings or not. This contract also provides that "jurisdiction of the assured shall for the purposes of the Workmen's Compensation Act, be jurisdiction of the company and the company shall in

all things be bound by and subject to the orders, findings, decisions or awards rendered against the assured.'' That is to say, respondent entered into a contract of liability instead of a contract of surety, and thereby assumed direct liability to each employee of the insured and made the insured its agent for all purposes by expressly stipulating that it should be ''subject to the orders, findings, decisions or awards rendered against the assured.'' It might at any time have appeared and defended in person, but it was none the less bound by the appearance and defense of the insured. Under its contract the insured was the statutory legal representative of the insurance company for the purposes of all proceedings, process and awards, and the judgment against the insured is binding upon the insurer. (*Maryland Casualty Co. v. Peppard,* 53 Okl. 515, 157 Pac. 106, L. R. A. 1916E, 597; *Fenton v. Poston,* 114 Wash. 217, 195 Pac. 31.)

Respondent in its answer pleads an agreement between the defendant mining company and the Aetna Casualty & Surety Company entitled ''Idaho Compensation Surety Bond,'' which, so far as anything to the contrary in the record is concerned, is in compliance with C. S., sec. 6278, requiring a surety bond or guaranty contract, and this agreement is recognized by the Industrial Accident Board, for there is a finding by it that the respondent ''Aetna Life Insurance Company and the Aetna Casualty Company canceled its Workmen's Compensation policy No. C–0319469 and bond No. S–98733 written on the part of the Coeur d'Alene Antimony Mining Company, effective August 20, 1918, for nonpayment of premium, which cancelation notice was given to the Coeur d'Alene Antimony Mining Company, Mr. C. O. Broxon, Idaho State Insurance Manager, and to the Industrial Accident Board of the State of Idaho, each dated August 8, 1918, and further that the death of Arthur F. Hauter was suffered November 18, 1918, it is recommended that the Industrial Accident Board of the state of Idaho rule that the above cancelation is effective and valid as of August 20, 1918, and the claim of the dependents

of Arthur F. Hauter, deceased, against the Aetna Life Insurance Company and the Aetna Casualty & Surety Company, both of Hartford, Connecticut, be denied, and that said companies be ruled not liable, either directly or indirectly, for the payment of any benefits whatsoever as contemplated by the Workmen's Compensation Act of the state of Idaho."

In this proceeding the petitioners did not make the casualty company a party and do not appear to have relied upon its contract of indemnity, but base their claim solely upon the insurance policy referred to. The relationship between these two companies does not appear from the record otherwise than as stated. Respondent pleads the indemnity contract and alleges that both were canceled at the same time and by the same act. We have already held that this policy was in force at the time of Hauter's death because the attempted cancelation was not effective for the reasons stated; that the finding of the Industrial Accident Board that this policy had been canceled was an error of law in the construction of the terms of the same; that all the facts being admitted it is a question of law, and a direct appeal from such conclusion was not necessary to preserve the rights of claimants. Being a question of law it was properly before the trial court and is now before us on this appeal.

We also adhere to our views, expressed in the former opinion, that the claimants, petitioners in this proceeding, are entitled to a judgment against respondent for the amount found by the Industrial Accident Board, and all questions of law and fact necessary to sustain a judgment having been determined adversely to respondent and there being no further facts to be determined, the cause is reversed and remanded, with instructions to enter a judgment against respondents in accordance with the award of the Board. Petitioners to recover costs.

McCarthy, C. J., and Budge and Dunn, JJ., concur.

WM. E. LEE, J., Dissenting.—The policy of insurance within itself is clearly not in compliance with the workmen's

compensation law. However, there was attached to the insurance policy a rider, under the provisions of which it is sought, in this proceeding, to recover against the insurance company. The rider provided that the liability of the antimony company for compensation to its injured employees is covered by the policy of insurance, and that the employees shall have the right to enforce in their own names the liability of the insurance company for the payment of compensation *"by at any time filing a separate claim or by at any time making the insurance company a party to the original claim."* The expression, "by filing a separate claim," evidently means filing a separate claim with the insurance company, since there would be no necessity for filing a separate claim anywhere else or with anybody else. The expression, "by making the company a party to the original claim," means that the insurance company shall be made a party to the original claim for compensation. The insurance company has a right to stand upon the terms of its contract. Two methods are provided in the contract of insurance by which the liability of the insurance company may be enforced; and it would seem necessary to pursue one of such methods in order to hold the insurance company. No claim, separate or otherwise, was ever filed with the insurance company. The insurance company has never been made a party to the original claim, unless it may be said that the proceedings instituted by appellant in the district court on June 30, 1921, about two and one-half years after the death of Mr. Hauter, may be considered as such. In other words, can a notice to an insurance company, in a proceeding supplementary to execution, be considered "making the company a party to the original claim"?

Not only does the rider attached to the insurance policy presuppose the filing of a claim for compensation, but the workmen's compensation statute requires that a claim for compensation shall be in writing (C. S., sec. 6244) and shall be made within one year after death or injury. (C. S., sec. 6243.) It is recited by the board that a claim

was filed by appellant and presented to the antimony company. There is no contention that the insurance company was ever served with the claim, a copy thereof, or with a separate claim. On November 6, 1920, the board made an award against the Antimony Mining Company. Thereafter and on March 25, 1921, the district court made and entered judgment upon the award in favor of appellant and against the antimony company. (C. S., sec. 6271.) In these proceedings the insurance company was not mentioned; it was not made a party to the claim, or award or action.

On June 30, 1921, a petition was filed in the district court praying that "an order be made and issued by this court, making the Aetna Life Insurance Company a party to this action and directing it to appear. . . . . " Respondent answered, and, among other things, alleged that appellant had never at any time filed any separate claim against respondent and had never made respondent a party to the original claim for compensation. In my opinion the filing of a petition in the district court, as was done in this case, praying that respondent be made a party to the action and be required to show cause why execution should not be issued against it, is not and cannot reasonably be held to be the making of the insurance company a party to the original claim. The original claim was merged in the award made by the board just as the award later became merged in the judgment entered on the award.

I cannot agree to the conclusion reached by the majority in the opinion on rehearing.