253 P.2d 800

PASSMORE et al. v. AUSTIN et al.

No. 7944.

Supreme Court of Idaho.

Feb. 17, 1953.

Hawley & Marcus, Boise, James, Shaw & James, Gooding, for employer.

Branch Bird and Cecil D. Hobdey, Gooding, for claimant.

E. B. Smith, Boise, for respondents.

PORTER, Chief Justice.

On October 4, 1951, one Beryl M. Passmore was in the employ of appellant Austin at Wendell, Idaho, as an oil-tank driver. Early in the morning of that day, Passmore was driving an oil tanker about three miles east of American Falls when the equipment ran off the highway and the driver was fatally injured. Passmore was the husband of appellant Mary E. Passmore and the father of Beryl M. Passmore, Jr.

Claim for compensation was filed with the Industrial Accident Board. Thereafter, petition for hearing was duly filed with the board wherein appellant Austin and respondent as his surety were named as defendants. Appellant Austin answered admitting liability. Respondent answered and denied liability on the ground that it had canceled the surety bond of appellant Austin prior to the accident for non-payment of premium.

Hearing was duly had on the claim at Gooding on May 9, 1952, and was completed at Boise on May 27, 1952. The hearing resulted in an order of an award against appellant Austin and in dismissal of the claim as against respondent on the ground that the surety bond had been canceled prior to the accident. From such order of dismissal appellants have appealed to this court.

The controlling question on this appeal is whether the continuous statutory surety bond, dated October 29, 1947, filed by respondent with the Industrial Accident Board insuring appellant Austin against liability under the Workmen's Compensation Law, had been legally canceled at the time of the accident, or was still in force and effect.

The Hurtt Agency of Boise, was the duly authorized agent of respondent. In August, 1951, the Hurtt Agency billed Austin for premiums earned to July 1, 1951, in the sum of $211.36; and under date of August 8, 1951, received a check from Austin for $100 to apply on the account. The proceeds of this check were not remitted at the time to the office of respondent at Coeur d'Alene. On August 23, 1951, respondent wrote to Austin requesting payment of $211.29 and stating if this amount were not paid by September 4, it would be necessary to cancel the insurance. A copy of this letter went to the Hurtt Agency.

Under date of September 5, 1951, respondent mailed to the Industrial Accident Board a cancellation notice which was there

received September 7, 1951, and which reads as follows:

"Coeur d'Alene, Idaho

Sept. 5, 1951

"Cancellation Notice

"To The Industrial Accident Board
Boise, Idaho
and to
Wm. L. Austin
Wendell, Idaho

"You and each,of you are hereby notified that the Idaho Compensation Company hereby cancels Workmen's Compensation Policy No. C–10151 issued to the above named employer, and Bond No. C–10151 filed with the Industrial Accident Board, Boise, Idaho, covering the compensation liability of said employer in the State of Idaho and dated Nov. 21, 1947, said cancellation to be effective at 12:01 A. M. on the 17th. day of Sept. 1951, said Policy and Bond to be null and void without any further notice after said 17th. day of Sept. 1951

Idaho Compensation Company

By Ralph S. Nelson

President

"Reason for cancellation: Non-payment of premium"
A copy of such cancellation notice was sent to the Hurtt Agency.

A few days before September 17, 1951, the Hurtt Agency called Austin on the telephone at his office in Wendell and made arrangements to meet him there on September 17, to pick up the balance of the past due premium. The meeting was held and Austin gave the Hurtt Agency a check for the balance due in the sum of $111.36. Austin testified at the hearing that the Hurtts told him the payment put his policy in good standing. Mrs. Hurtt testified she told Austin she would send the remittance to the company and ask for reinstatement of the policy.

On the morning of October 4, 1951, the fatal accident happened to Passmore. At 7 o'clock P. M. on that day the Hurtt Agency mailed a remittance to respondent for $184.94 to cover the $100 received on August 8 and $111.36 received on September 17 less its commission.

Both the statute and the surety bond provide how the insurance may be canceled. Section 72-808, I.C., as amended by 1951 Session Laws, Ch. 171, p. 366, reads as follows:

"No policy of insurance or guaranty contract or surety bond issued against liability arising under this act shall be cancelled within the time limited in such contract for its expiration until at least ten days after notice of cancellation of such contract on a date specified in such notice, shall have been filed with the industrial accident board, and also served on the other contracting party either personally or by registered mail."

488

The bond contains the following provision:

"This bond may be cancelled at any time by the Surety upon notice of cancellation of such Bond on a date specified in such notice filed with the Industrial Accident Board and also served upon the employer either personally or by registered mail and may be cancelled by the Principal by similar notice filed with the said Board and served upon the Surety by Registered mail; but no such cancellation shall be effective if made within ten (10) days of the date such notice is so filed and served."

The record does not disclose and respondent does not appear to contend that the cancellation notice was served upon appellant Austin either personally or by registered mail. Respondent attempted to show that the cancellation notice was sent to Austin by ordinary mail by offering in evidence the affidavit of a policy clerk in the office of respondent in Coeur d'Alene but the offer as made was rejected by the board. This rejected exhibit bears the stamp that it was received by the board on May 26, 1952, that is, the day before the second hearing on May 27, 1952. The unearned portion of the premium paid was not tendered back to appellant Austin until during the hearing on May 27, 1952.

Under cross-examination Austin testified that he received a letter from respondent along about September 7, 1952. He testified:

"Q. Then to your best recollection it was a letter in accordance with this letter here?

"Mr. Shaw. He didn't say that.

"A. The letter I received said if the premium wasn't paid by the 17th the policy would be canceled, but not a notice of cancellation, to the best of my knowledge.

\*    \*    \*    \*    \*    \*

"\* \* \* Have you got that letter with you?

"A. No, I haven't.

"Q. Can you produce it?

"A. No. I don't have it.

"Q. Do you have it in your file?

"A. I thought I had it, but it has been misplaced."

On the foregoing evidence, the board found:

"While Austin evaded questions as to the contents and service of said notice and confused it with a prior letter dated August 23, 1951, in which the Idaho Compensation Company had warned him of cancellation (Ex. 19), there is little doubt that service of such notice of cancellation upon him was duly made, although he did not himself realize its import and effect and the necessity for his protection of its formal reinstatement on the records of the board."

The finding that Austin evaded questions does not appear to be justified from the foregoing testimony; and the finding that "there is little doubt that service of such notice of cancellation upon him was duly made" is not a positive finding of any fact.

The Board's Ruling of Law No. 13 was:

"The board finds and rules that cancellation of the surety bond theretofore filed on behalf of the employer was effected as of September 17, 1951, pursuant to the provisions of the bond and of Sec. 72–808 I.C."

Respondent attempts to justify the board's conclusion of law that the surety bond had been legally canceled by stating on page 17 of its brief as follows:

"In view of Austin's acknowledging that he received the instrument of policy cancellation as of September 7, 1951, and the Board finding in that regard that he did, such constituted the equivalent of personal service required by I.C., section 72–808; for acknowledgement of service is the full equivalent of 'actual personal service'."

The only case cited to support such contention is Priester v. Priester, 131 S.C. 284, 127 S.E. 18. In the Priester case the court was dealing with a written · acceptance of service endorsed upon the back of a formal notice of filing a decree. It was not concerned with statutory or contractual requirements as to notice of cancellation of insurance in a compensation case.

Our court early adopted the rule that compensation insurance could only be canceled by a strict compliance with the conditions of the contract. The insurance policy under consideration in Hauter v. Coeur d'Alene, etc., Min. Co., 39 Idaho 621, 228 P. 259, provided for 30 days notice of cancellation. The notice given only provided for 12 days notice prior to cancellation although 30 days had elapsed after giving of the notice before the injury occurred. The court held the attempted cancellation ineffectual and said, 39 Idaho at page 631, 228 P. at page 262:

"No case is called to our attention involving the cancellation of a policy of this kind given under the provisions of the Workmen's Compensation Act. In view of the fact that such contracts are issued not only for the benefit of the assured, but for the benefit of its employees, who necessarily have no control over the contract, we are of · the opinion that such contracts should be canceled only by a strict compliance with the conditions of the contract itself."

On rehearing the court reaffirmed its previous holding and stated, 39 Idaho at page 635, 228 P. at page 264:

"In this view of the law we think the insurer should be required to comply with the terms of its policy with regard to its cancellation. If the question was one solely between the insurer and the insured, the acquiescence of the assured in the attempted

cancellation, however irregular, would estop it to deny the same."

The case of State ex rel. Wright v. Smith, 60 Idaho 316, 91 P.2d 389, again recognizes that the insurer must fully conform to the requirements of the statute and the provisions of the policy in order to legally cancel a policy of insurance issued under the Workmen's Compensation Law. In Cowles v. State Ins. Fund, 67 Idaho 165, at page 170, 173 P.2d 722, at page 724, this court said:

"In the case of Hauter v. Coeur d'Alene Antimony Mining Co., 39 Idaho 621, 228 P. 259, we announced the rule as follows: 'An insurance policy insuring an employer under the Workmen's Compensation Act, * * can only be canceled by the insurance company's strictly complying with the conditions of the policy relating to the manner of canceling the same.' (Cited and followed in the case of Home Accident Co. v. Pleasant, 36 Ariz. 211, 284 P. 153, 156; see, also, 107 A.L.R. 1515, note.)

"Strict compliance in the matter of cancellation of compensation insurance policies has long been adhered to in this jurisdiction and is enjoined by the statute, secs. 43–1601, 43–1608, 43–1720, I.C.A. [now secs. 72–801, 72–808, 72–920, I.C.]."

In the Cowles case the insured had requested termination of the insurance, had acquired other insurance and had ceased to pay premiums to the Insurance Fund and a notation of cancellation had been made. The court held the Fund liable as the Fund had not canceled the insurance in the manner required by statute.

In the case of Home Accident Ins. Co. v. Pleasant, 36 Ariz. 211, 284 P. 153, the court, in holding that a strict compliance with the statutory and contractual requirements is mandatory in order to cancel a policy of insurance issued under the Workmen's Compensation Law, quotes with approval from the Idaho case of Hauter v. Coeur d'Alene, etc., Min. Co., supra.

In Hill v. Industrial Acc. Comm., 10 Cal. App.2d 178, 51 P.2d 1126, at page 1131, the question of cancellation of a policy under the Workmen's Compensation Law was before the court and it was there said:

"In that instrument it was provided that to effect a cancellation it must give 'written notice to the other party stating, when, not less than ten days thereafter, cancellation shall be effective.' It could not cancel its policy by any notice short of the one it had bound itself to give. It did not give such a notice of cancellation. The policy having been prepared by the insurance company, its terms must be construed against it and it must be held bound by them. Witherow v. United American Ins. Co., 101 Cal.App. 334, 281 P. 668."

The holding on the point in question in Preferred Acc. Ins. Co. of N. Y. v. Van

Dusen, 202 Okl. 124, 210 P.2d 341, is contained in Syllabus 1., reading as follows:

"The statute providing that no compensation policy shall be cancelled until notice of intention to cancel is filed with the State Industrial Commission and served upon the employer is mandatory and must be strictly complied with to effect cancellation of the policy in so far as rights of the injured employee and jurisdiction of the Commission is concerned, notwithstanding that the employer has actual knowledge that the policy has been returned for cancellation. 85 O.S.1941 § 64(e)."

For other cases holding that a strict compliance with the statute and terms of the policy is mandatory in order to effectually cancel a policy of insurance issued under the Workmen's Compensation Law, see Home Petroleum Co. v. Chipman, 106 Okl. 225, 233 P. 738; Maryland Casualty Co. v. Johnson, 134 Okl. 174, 272 P. 833; Piscitello v. Boscarello, 113 Conn. 128, 154 A. 168; Scott v. Hoage, 63 App.D.C. 391, 73 F.2d 114; Annotation 107 A.L.R. 1514. See also, Johnson v. Welch, 48 Idaho 284, 281 P. 748; Lawyer v. Sams, 72 Idaho 101, 237 P.2d 606.

The surety bond of respondent not having been canceled as required by statute and by the terms of the bond, we must hold as a matter of law that the Industrial Accident Board erred in concluding that the surety bond had been legally canceled and was not in effect at the time of the accident; and erred in holding that respondent is not liable in this cause.

Appellant Passmore seeks attorney fees. The claim for compensation was not contested without reasonable ground by respondent. Attorney fees will not be allowed. Section 72–611, I.C.; Rivera v. Johnston, 71 Idaho 70, 225 P.2d 858.

The order of the Industrial Accident Board dismissing respondent Idaho Compensation Company as a party defendant herein is reversed and the cause is remanded to the board with direction to enter an order making its award of compensation applicable to and against respondent. Costs awarded to appellants.

GIVENS, TAYLOR, THOMAS and KEETON, JJ., concur.